Statement of the case.

## MARY R. BLANTON v. JOSHUA J. MAYES.

(Case No. 1387.)

1. WILL — EXECUTORS.— By will dated December 12, 1871, and probated in 1875, a testator willed and bequeathed to three persons "*and the survivor of them,*" all his estate, upon certain trusts which were specified. Only one of the parties named qualified, the other two having declined the trust. The three to whom the bequest was made in trust were named as executors of the will, which provided that no further action should be had in the district or other court having jurisdiction of probate matters, than the probate and registration of the will. In a suit by an administratrix with the will annexed to recover land which had been conveyed, without order of court, by the one executor who qualified, *held,*

(1) The provision of the statute of 21 Henry VIII, c. 4, in so far as it provided that the trusts conferred in a will on several executors named might be discharged by those of them who qualified, was in effect engrafted on the probate system of Texas by the act of August 15, 1870.

(2) But when the testator bequeathed in trust to several executors "and the survivor of them," as independent executors, and but one qualified, the others being still alive, the independent feature of the will must be disregarded, and the executor qualifying must administer the estate as in other cases, under the orders of the probate court.

(3) The death of the co-executors named is the sole event which can authorize the one who qualifies under such a will to administer the estate and execute the trusts of the will free from control of the probate court.

2. DISTINGUISHED.— This case distinguished from Johnson v. Bowden, 43 Tex., 671.

3. CHARGE OF COURT.— It is ground for reversal to submit to the jury an issue in reference to which there is no evidence, if they may have probably been misled by the charge.

4. POWER OF EXECUTOR TO SELL LAND.— See opinion for terms of a will in which the power to "manage" and "control" the estate until the majority of the heirs, and then to divide the estate with its accumulations between them, was given to independent executors, which did not confer on them the power to convey land.

APPEAL from Chambers. Tried below before the Hon. Edwin Hobby.

On March 5, 1880, appellant, as the administratrix with the will annexed of the estate of Traugott Schlutter, deceased, brought this action of trespass to try title against appellee Mayes, to recover the lands described in the petition, and to remove cloud from title, etc., claiming the lands as belonging to the estate of Schlutter, and that the same had been illegally sold and conveyed to appellee by one Howard, who was acting as the executor of Schlutter's will.

The will bore date December 12, 1871, and was probated June 9, 1875; the deed to appellant was executed January 7, 1876. Appellant was appointed administratrix with the will annexed August 4, 1876. By the will the property of Schlutter was bequeathed to John Howard, Bever R. Davis and Julius Fredrich, "and the sur-

vivor of them in trust," as therein provided. He also appointed them executors, and provided that they should act independent of the courts. Davis and Fredrich renounced the trust and Howard qualified. It was claimed that he had no power under the will to make the sale and conveyance to appellee.

Appellee answered by a general demurrer, and " not guilty."

March 8, 1881, a trial of the cause was had, which resulted in a verdict and judgment for appellee, from which this appeal was taken.

The points relied upon for reversal were: 1st. Howard could not sell and convey land under the terms of the will, Fredrich and Davis having declined the trust. 2d. The court erred in charging the jury that Howard had authority to sell the property to pay debts, or to invest the proceeds so as to secure an income; for in the first instance there was no evidence authorizing the charges, and in the second case there was no such power conferred by the will.

*Wharton Branch*, for appellant.

I. The power conferred in a will upon the executor is limited by the terms of the will, and cannot be enlarged by intendment. Langley v. Harris, 23 Tex., 568, 569; Tippett v. Mize, 30 Tex., 365, 366.

II. The court erred in charging the jury that said Howard had power to sell the land in controversy for the purpose of paying debts due by said estate, and misled the jury thereby in this; there were no debts due by said estate. The charge should be limited to instructing the jury as to the law upon only the facts in controversy. R. S., art. 1317, p. 208; Hollingsworth v. Holshausen, 17 Tex., 47; Chandler v. Fulton, 10 Tex., 22; Garrett v. Chambliss, 24 Tex., 616; Hatch v. Garza, 22 Tex., 187; Earle v. Thomas, 14 Tex., 583.

III. It was the duty of the court to inform the jury as to the legal effect of the will. Same as before, and San Antonio v. Lewis, 9 Tex., 71.

IV. Whether the executor Howard had power to sell under the will is a question of law, and not of fact, and depends upon the proper legal construction of the effect of the will; and the power to sell must appear in the writing itself, and is not conferred by outward circumstances save upon order of court upon petition of creditors to pay debts; and to violate the intention of the testator is to deprive him of his property without his consent. Ferguson v. Ferguson, 27 Tex., 342; Reese v. Medlock, 27 Tex., 123; Merriman v. Fulton, 29 Tex., 103; Robson v. Watts, 11 Tex., 768; Giddings v. Butler, 47 Tex., 535–547; Runnels v. Kownslar, 27 Tex., 532, 533.

V. The court erred in charging the jury that the deed of John Howard, executor, to defendant Mayes operated to pass the title of the estate of T. Schlutter, in the event the same was sold to produce an income or pay debts of said estate, and erred in refusing to charge the jury that said deed did not convey the title to said land out of the estate of said Schlutter. Tendick *v.* Evetts, 38 Tex., 279; 2 Redfield on Wills, rule 13, p. 226; Philleo *v.* Holliday, 24 Tex., 41; Dial *v.* Dial, 21 Tex., 529; Bell Co. *v.* Alexander, 22 Tex., 357.

*Wm. Chambers*, for appellee.

I. The court did not err in its charge to the jury. Brailsford *et ux. v.* Heyward, 2 Desaus., 237; Reno's Ex'r *v.* Davis *et ux.*, 4 Hen. & Munf., 283; Sams *v.* Mathews *et al.*, 1 Desaus., 237; Taylor *v.* King, 6 Munf., 366; Roberts' Widow and Heirs *v.* Stanton, 2 Munf., 129; Langley *v.* Harris, 23 Tex., 568, 569.

II. The court did not err in refusing to set aside the verdict, and in overruling the motion for a new trial. The very right and justice of the case was attained, and under the facts proven and the law applicable thereto the verdict and judgment should stand. Howze *v.* Howze, 19 Tex., 554, 555; Webster's Unabridged Dictionary, words "Manage" and "Control."

WATTS, J. COM. APP.— How far the power of Howard to manage and control the property under the will would be affected by the refusal of Davis and Fredrich to qualify as executors, presents an important and difficult question. Schlutter's will provides as follows: "I will and bequeath unto John Howard, Bever R. Davis and Julius Fredrich, of Galveston, and to the survivor of them, all and singular my estate and property, real, personal and mixed, in trust for the uses and purposes following."

And further: "I appoint the said John Howard, Bever R. Davis and Julius Fredrich, executors of this my will, and desire that no further action be had in the district or other court having jurisdiction of probate matters, than the probate and registration of this my will," etc.

Davis and Fredrich declined to qualify under the will. Howard did qualify, and acted alone as such executor in making the sale to Mayes.

It is well settled that the primary rule in the construction of wills is to ascertain and follow the intention of the testator. Howze *v.* Howze, 19 Tex., 554; Paschal *v.* Acklin, 27 Tex., 193; Orr *v.* O'Brien, 55 Tex., 158.

. In its ordinary as well as legal signification, the word "survivor" means one who outlives another; one of two or more persons who lives after the other or others have deceased. 2 Blackstone's Com., 183, 184; Webster's Dictionary, "Survivor."

It is said in 2 Jarman on Wills, 609-616, that this is the natural and proper meaning of the term which is usually given to it by the courts in the construction of wills. In some cases, however, the term has been construed to mean "other," where it has appeared necessary in order to give effect to the apparent intention of the testator. 2 Williams on Executors, 1256.

In the case of Johnson v. Bowden, 43 Tex., 671, by an independent will the testatrix had nominated and appointed two persons as executors; in another provision the following language occurred: "Should my executors deem it to the interest of my estate to sell the house and lots this day deeded to me by my daughter, Drucilla Bowden, at public or private sale, I direct that they shall have full power to do so."

This will was duly probated, and but one of the executors qualified; he then sold and conveyed the lots. The question before the court was as to the validity of this sale. Justice Moore, delivering the opinion of the court, said: "By this will the power was given the executors without naming them. The payment of the debts and the general management and settlement of the estate was committed to their charge. And whether in doing this it would be to the advantage of the estate to sell these lots was certainly intrusted to the discretion of her executors *virtute officii*. As the duty of settling the estate devolved alone on Gooch by the renunciation of Herrill, he was unquestionably intrusted with the same discretion in the exercise of the powers with which the executors were intrusted for this purpose. If this was not so, the renunciation of the trust by one executor would render the qualification of the other nugatory."

It was insisted in that case that the statute of 21 Henry VIII, c. 4, which provides that the qualified and acting executors may execute the will where others named refuse to qualify and act, had not been adopted in this state, and therefore the decisions made under it should not be considered as authority. The court in effect say that while it is true that statute has not been adopted by the legislature, still the principle is embodied in section 74 of the act of March 20, 1848 (Pasch. Dig., art. 1335), to regulate proceedings in the county court pertaining to the estates of deceased persons.

At the time the will in this case was probated and the sale made, that section of the statute had been repealed by the act of

August 15, 1870, entitled "An act prescribing the mode of proceeding in district courts in matters of probate." Sec. 274 of that act provides, in effect, that where there is more than one executor, and the letters of one or more of them be revoked or surrendered, or part die, those who remain shall discharge all the duties required by law touching such estate. Sec. 275 in effect provides that if any person appointed executor shall fail to qualify within the time named in the order, then the court should appoint a receiver to hold the estate until an administrator could be appointed and qualified; while section 85 of that act is as follows: "When the will is admitted to probate, it is the duty of the court to grant letters testamentary to the executor or executors named in the will, if any there be, or to such of them as are not disqualified, and are willing to accept the trust and qualify according to law within the time prescribed by the court."

These several sections do most certainly engraft upon our probate system the principles of the statute of 21 Henry VIII, c. 4, to their full extent. But whether the result contended for necessarily follows admits of doubt. Under the English system at that time the executor had nothing whatever to do with the lands of the testator, while the act of 1870 fully empowered the executor or administrator to sell the personal property, without procuring any order from the court for that purpose. In respect to wills other than those known as independent wills, the court was required to approve the provisions of the same, and direct them to be carried into execution, and such an order was required to be made and entered of record as a condition precedent to the execution of the trust by the executor.

Whether section 85, quoted above, contemplated independent wills as coming within its provisions, so far as one or more executors qualifying where others renounce, does not seem to admit of doubt. But does it necessarily follow from this conclusion that the legislature intended to supplement the powers conferred by such independent will, so as to authorize a less number of persons to execute the trust independently of the courts than is provided for by the will? It is thought not. The doctrine is well established that when an administrator is appointed under such a will, that he can do nothing by virtue of the extraordinary powers thereby conferred, but that he must derive his authority from the court, and act by virtue of its orders.

In Langley v. Harris, 23 Tex., 569, in considering such wills, the court, in effect, said that the trust thereby created was special in its

nature and operation and could not be transferred by the executor nor delegated by the court; and that where the executor named in the will fails or refuses to accept the trust, that clause of the will fails, and is inoperative, the same as if it had been omitted.

It does not seem to us that the legislature intended by the provisions of the statute adverted to above to extend, or aid in extending, the independent feature of such wills. Then the effect of the statute upon the direct questions under consideration, it seems to us, is referable to and dependent upon the terms of the will; and where the will, as in this case, creates the trust upon personal confidence reposed in the particular persons named and the survivor of them, and where one or more of them refuses to qualify, that it was intended that such as were willing to accept should be appointed. But as the contingency upon which the will by its terms had authorized a less number than the whole to act had not happened, that under such circumstances the independent feature of the will should be considered as of no effect, and those qualifying should administer the estate as in other cases under the order of the probate court.

In Johnson v. Bowden, *supra*, great stress is laid upon the fact that the testatrix must have known that by the renunciation of one of the executors named, the sole management of the estate would be committed to the other, and therefore she must have intended that the one qualifying should exercise all the independent powers conferred upon the two by the will.

If that circumstance is to have controlling influence in the construction of wills without regard to their terms, then it would effectually do away with the other rules of construction, and determine the question. For in every case where a party has capacity to make a will, he would certainly recognize the fact that the one executor could qualify under the statute notwithstanding the others named might renounce the trust.

Schlutter, in the will under consideration, imposes a special confidence in the three persons named, or the survivor of them, to administer his estate in the manner therein outlined, independently of the probate court. In the exercise of the powers thus conferred, the contingency that would authorize less than the whole number to act independently of the court is clearly indicated by the expression "to the survivor of them." The death of one or more of the trustees named seems to have been intended as the *sole* event that would authorize one alone to administer the estate and execute the trust independent of the controlling power of the courts.

This case is unlike that of Johnson v. Bowden. Here the property is vested in three trustees by name, or the survivor of them. There the ordinary time for the administration and settlement of the estate seems to have been contemplated by the testatrix as the duration of the trust created by her. Here the testator obviously contemplated that the trust created by his will should continue for a number of years. In the management of the property and the accruing revenues, he evidently intended to secure the conjoint judgment and action of his three trusted friends, so long as they all lived. And in conferring the power upon them, he does not refer to them as a class, but as "*my said trustees.*"

Then, recognizing that case as authority to its fullest extent, we are of the opinion that there is no conflict between it and the conclusion we have reached in the case before us.

The term "survivor of them," it seems, was used in view of the probable duration of the trust, and to provide against the event of the death of one or more of these trustees, so that less than the whole number in that event might complete the unfinished execution of the trust.

Appellant claims that the court erred in charging the jury that if the sale was made by Howard for the purpose of paying debts or to convert the property into money so that it would produce an income, then to find for appellee. The objection to this charge is twofold. First, that there was no evidence that would warrant the charge, as it was not shown that there were any debts against the estate. Secondly, that the will did not empower the trustees to sell real estate for the purpose of securing an income.

As to the first proposition, there was no evidence in the record showing that there were debts against Schlutter's estate, while the evidence of Mayes clearly negatives any presumption that the purpose of the sale was the payment of debts; he says that Howard told him that the land did not produce an income, but that the money would, and that therefore he would sell it to him.

It is error, and ground for reversal, to submit to the jury an issue upon which there is no evidence, if the jury may have been probably misled by the charge. Austin v. Talk, 20 Tex., 164; Lee v. Hamilton, 12 Tex., 413. Here it does not appear but that the jury may have been misled by this portion of the charge of the court.

The provisions of the will which are necessary to be considered in the determination of the second proposition are these: " That my said trustees shall retain in their hands and under their control the property following or remaining to my estate after partition with

my wife, and shall manage the same to produce an income, which income shall remain and accumulate in their hands or under their control and management, until the eldest child of my daughter Mary shall have arrived at the age of twenty-one years or shall have married; and shall then divide the original property with its accumulations between the children of my daughter Mary then living, share and share alike."

And again: "It being intended by me that my estate shall remain in the hands of my trustees and the right of possession be in them until the contingency happens which entitles the beneficiary to claim the same."

There is no express authority conferred upon the trustees to sell for any purpose. Now, whether or not an implied power to sell for the purpose of paying the testator's debts would not arise out of the language of the first subdivision, which is, "that they shall pay out of the whole estate my just debts," need not be determined, as there is no pretense that this sale was made for that purpose.

In the management and control of the estate is there an implied power to sell real property for reinvestment so as to secure an income, derivable from the language employed, when considered in connection with the subject matter of the trust? The terms "manage" and "control," standing alone and unaided by other considerations, could not be considered as conferring a power to sell. Where the agent's power is to manage and control lands, we apprehend that no one would claim that this would authorize a sale and conveyance by the agent. If the power of sale for this purpose exists in the trustees, then it is not derivable from the words used, but must arise out of the nature of the trust. Here it is to be presumed that the testator had made his investments upon full consideration and advice, with a view of ultimately deriving the best possible income therefrom. It is but natural to suppose that if he desired these investments to be changed that he would have conferred upon his trustees express power to that end. Apparently he studiously avoided using the words "sell" and "convey" throughout the entire instrument; and the idea that he intended to convey such power by implication is negatived by the terms of the will. His trustees are to retain in their hands and under their control the property of his estate remaining after the wife shall have received her share. When the time arrives for dividing this remaining property among his legatees, the trustees are expressly directed to divide the *original* property with *its* accumulations between them. This language very clearly indicates, when taken in its usual and natural

signification, that he intended that the identical property left by him, which would remain after the wife had obtained her share, would be on hand for distribution among his other legatees.

The fact that these trustees might deem it to the interest of the legatees to sell the property and reinvest the proceeds would furnish no reason for distorting the language used so as to extract from it this implied power. Nor would the fact that by such sale and reinvestment a larger income could be derived, afford a basis for such a construction. If in the management of this trust a sale and reinvestment became necessary, the courts in the exercise of their equitable powers could afford the appropriate relief. Hence the plea of necessity should have no controlling influence in the determination of the question.

The record is silent as to the circumstances surrounding the execution of the will. We are not informed as to the value of the property, the condition of the estate or the amount of the debts, if any. As to the value of the property, there is one circumstance that might be considered as an approximation; the bond of the administratrix was fixed by the court at $120,000.

Thus, unaided by any extraneous considerations, we conclude from a fair and reasonable construction of the language, in connection with the subject matter of the trust, that the trustee was not authorized to sell and convey the land for the purpose of reinvesting the proceeds with a view of securing an income.

The conclusion reached is that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion approved January 29, 1883.]

Chief Justice WILLIE did not sit in this case.