PHILIP ANDERSON v. F. S. STOCKDALE.

(Case No 1370.)

1. JOINT EXECUTORS — PARTIES — STATUTES CONSTRUED — WILL.— A will executed in 1866 appointed two "joint executors" of the same, and guardians of the property and person of the legatee; it contained the expression of a desire that the county court should exercise no other control of the estate than the registration of the will, and that the executors should exercise "the fullest and most absolute control" of the estate and of the person and property of the legatee, who was a minor, "that is accorded or permitted by law." One of the parties named as executor died during the life of the testatrix. *Held:*

(1) The provisions of the act of 21 Henry VIII., ch. 4, which authorized a qualified and acting executor to execute a will when other executors named therein refused to act, were practically adopted by arts. 1268 and 1335; hence, the general rule which required joint trustees to act together in the execution of a power, has no application to executors appointed by will. *Citing Johnson v. Bowden,* 43 Tex., 670, and *Blanton v. Mayes,* 58 Tex., 422.

(2) The doctrine above announced has its application also to executors who are charged with the execution of the will independent of the control of the probate court.

(3) The application of the rule is not affected by the fact that the testator designated the executors named as "joint executors," or that one of the executors died before the testatrix; one being dead, the survivor could execute the trust alone.

(4) The power to sell real estate, when necessary to pay debts or execute executory contracts of the testatrix, could be exercised in this case by the executor under the general powers conferred by the will. Beyond this no power to convey real estate existed.

(5) The power to sell under such a will would not authorize an executor to convey the land of the estate to a joint stock company and receive shares of stock issued to himself in consideration for his deed to the land.

(6) When such a deed was executed the instrument creating the joint stock company vested the title acquired under the deed in trustees, and it was not necessary, in a suit by the legatee against the executor and the trustees to recover the land, to make the stockholders of the company parties.

APPEAL from Calhoun. Tried below before the Hon. H. Clay Pleasants.

Plaintiff on the 17th of February, 1881, sued F. S. Stockdale, D. C. Proctor and M. D. Monserrate, the trustees of the Indianola City and Land Company, a joint stock company, and T. C. Allen and A. Schwartz, to recover of them property inherited from his mother and devised to him by her last will, and also to recover of Stockdale the value of such property as had been lost to plaintiff by reason of Stockdale's alleged neglect and mismanagement of the estate of Sarah F. Anderson, as her executor.

He alleged in his petition that Mrs. Anderson's will, dated May 30, 1860, and probated May, 1866, appointed F. Jones and F. S. Stockdale joint executors, and that F. Jones died before the testatrix, and that because of the grant of a joint power by the will to the two executors, Jones and Stockdale, Stockdale alone could not exercise the powers conferred by the will. The will authorized administration outside the probate court. The property devised to plaintiff and named in the will was, first, two leagues of land in Nueces county, upon which the city of Corpus Christi is situated, originally granted to Levi Jones, assignee of Jose M. Bargas and Maguel Basques. The title to these leagues passed into I. Temple Doswell. They were by him recovered from adverse claimants by suit in supreme court of United States, and afterwards on the 20th of November, 1859, conveyed by Doswell to Mrs. Sarah F. Anderson.

2. A three-eighth interest, undivided, in sixteen leagues of land in Calhoun county, including the city of Indianola, now controlled by the Indianola City and Land Company — the title to which originated in Peter W. Grayson, who was common source of title — passed subsequently in part to Albert T. Burnley, from whom Mrs. Anderson derived her title by deed dated April 19, 1852, duly recorded.

3. A three-eighth undivided interest in one league of land in Jackson county, originally granted to L. Mansa, title to which also came to Mrs. Anderson through the deed of April 19, 1852, from A. T. Burnley.

4. Twelve lots in La Salle, and household furniture, etc.

The petition further alleged that Stockdale became executor of Mrs. Anderson's will in 1866, and without legal authority proceeded to exercise the powers conferred by the will.

That the will mentioned the property sued for, was duly recorded, and was notice to the world of plaintiff's rights to the property named.

That Stockdale filed no inventory, as required by law to do, and never accounted either to the probate court or to plaintiff, and refused to settle with plaintiff after he attained his majority, on 29th of April, 1868.

That Stockdale as executor, without authority under the will, conveyed to one W. R. Johnson on 27th of July, 1868, plaintiff's three-eighths of fifteen of the leagues of land in Calhoun county.

(This title subsequently returned and vested in the Indianola City and Land Company before this suit was brought.)

Stockdale made this conveyance under the following condition of affairs:

On the 3d of June, 1853, W. R. Johnson had recovered in the district court at Galveston a judgment against Levi Jones, the father of Sarah F. Anderson, for $17,376. By an instrument in writing, dated April 24, 1855, Mrs. Anderson, to secure to her father time to pay said judgment, and because, as her obligation recited, the notes which became merged in the judgment were given for the purchase money of her interest in the sixteen leagues of land conveyed to her by Burnley, agreed with Levi Jones to hold the land in Jackson and Calhoun counties subject to the payment of the debt due Wm. R. Johnson. Johnson was not a party to this instrument. Johnson knew of Mrs. Anderson's title to the lands before he instituted his suit against Jones, but did not make her a party or ask any decree against the land. The lands conveyed were then worth greatly more than the amount of Johnson's debt.

Plaintiff claimed that Stockdale's conveyance to Johnson was void to convey any title adverse to plaintiff. He charged that Stockdale held the lands as trustee for plaintiff and that Johnson had notice of the trust, and after conveyance to him held the land subject to the same trust that it was held under by Stockdale.

Plaintiff claimed that if Johnson was in equity entitled to the payment of said debt, that he had long since been fully paid; that ever since July 27, 1868, the three-eighth interest had been under the control of F. S. Stockdale and of the Indianola City and Land Company, claiming to represent Johnson and selling Johnson's interest as his agents, and they had received as his agents between July 27, 1868, and February 17, 1881, for Johnson, $51,924.90, an amount largely in excess of the debt and interest. The plaintiff further alleged that on the 20th of September, 1869, all the owners of the sixteen leagues of land in Calhoun county by a deed (which was made a part of the petition) formed a joint stock company known as the Indianola City and Land Company, and conveyed all their undivided interests in the land to the trustees of that company, and took in lieu thereof shares of stock  .That Stockdale, signing as executor of Sarah Anderson at that date, conveyed all of the plaintiff's interest in the sixteen leagues of land to that company without authority of law; that the company received the land charged with the same trusts as Stockdale held it under, and were trustees for plaintiff.

As to defendants Allen and Schwartz, it was stated that they purchased on the 27th of August, 1879, a league of land from the

Indianola City and Land Company for $13,039, $6,666.67 of which they paid in cash and gave their notes for the remainder, one-half to be paid in twelve and one-half in twenty-four months, vendor's lien being retained. It is stated that they bought the land with notice of and charged with the same trusts that it was held under when in Stockdale's hands, as executor, and prayer is made against them for the recovery of plaintiff's three-eighth interest and partition. But plaintiff says he is willing to make them a title upon their paying him three-eighths of the price they agreed to pay for said land.

None of those who purchased from the Indianola City and Land Company were made parties; nor was the land sold included in the prayer for partition, except that sold Allen and Schwartz.

Plaintiff claimed that if the deeds by Stockdale to Johnson and to the Indianola City and Land Company were invalid, he was entitled to a partition of the sixteen leagues of land, or so much as remained unsold, as against the Indianola City and Land Company, who were tenants in common with him, and he prayed that his title might be adjudged valid as to said lands, and that he might have partition.

He further claimed that if Stockdale had the right to convey plaintiff's interest to the Indianola City and Land Company, *then* they were bound to account to him as a stockholder for his share of the profits of said joint stock company since the 20th of September, 1869, which neither they nor Stockdale had done; and if the deed to Johnson was valid, still he had a three-eighth interest in *one league* remaining, which he was entitled to have partitioned, or in virtue of which he was entitled to share in the profits of the joint stock company.

As to F. S. Stockdale, it was alleged that he has never accounted to plaintiff; that he has been personally largely benefited by the formation of the Indianola City and Land Company, and it was with a view to this, and not for plaintiff's benefit, that he made the deed to the company of plaintiff's interest in the lands.

That Stockdale, since the 29th of May, 1866, had held in trust for plaintiff the three-eighth interest in the L. Mansa league, in Jackson county, that he might have received rent therefor. That he had refused to turn over to plaintiff his interest in the land, or to account to or pay him any rent for it. That he permitted it to be sold for taxes on the 6th of May, 1868, to a private person, and had not redeemed it up to July 14, 1881.

Prayer was made that Stockdale might be compelled to turn over

to him the possession and title deeds, and if it had been lost to plaintiff by tax sale, that plaintiff might have judgment against him for its value.

Plaintiff claimed also $2,700.61 from Stockdale for lands of plaintiff sold by Stockdale before the date of his conveyance to W. R. Johnson; and also asked that he account for all personal property, and pay over proceeds and interest to plaintiff and account for all moneys received and disbursed; and plaintiff charged that all Stockdale's acts were in law fraudulent. He asked that if he had no remedy against the Indianola City and Land Company and Allen and Schwartz, that Stockdale be held liable for and bound to account for and pay over to plaintiff the full value of all property lost to plaintiff by his acts and omissions and unauthorized conveyances; that he may be removed from his position as executor of Sarah Anderson's will, and further prayer for costs and general relief.

Defendants demurred generally and specially to the petition. The demurrers alleged in effect:

1. Want of equity in the bill.
2. Misjoinder of parties defendant.
3. Limitation of two, four, five and ten years, and stale demand.
4. Want of necessary parties defendant.
5. Multifariousness.

They were all sustained except that setting up multifariousness and misjoinder of parties defendant, and the plaintiff declining to amend, the suit was dismissed and plaintiff appealed.

*A. B. Peticolas*, for appellant, on the proposition that power vested by a will in two jointly without words of survivorship cannot be exercised by one alone, cited: Johnson v. Bowden, 43 Tex., 672; Langley v. Harris, 23 Tex., 569; Crosby v. Huston, 1 Tex., 226; Tippett v. Mize, 30 Tex., 366; 1 Perry on Trusts, secs. 273, 493; Hill on Trustees, 34, 735, side paging, 472, 473; Noel v. Harvey, 29 Miss., 72; 31 Ill., 364; Bradish v. Gibbs, 3 Johns. Ch., 523; Sanderlin v. Thompson, 2 Dev. (N. C.) Eq., 539; Russell v. Russell, 30 N. Y., 581; Graham v. Little, 5 Ired. (N. C.) Eq., 156; Doolittle v. Lewis, 7 Johns. Ch., 45; Smith v. Ayer, 11 Otto, 320, 327.

On misjoinder of parties, he cited: Clegg v. Varnell, 18 Tex., 295; Gaines v. Chew, 2 How., 619; Hunley v. Hunley, 15 Ala., 91; Kennedy v. Kennedy, 2 Ala., 571; McLachlin v. Staples, 13 Wis., 488.

*Stockdale & Proctor*, for appellees, on the survivorship of the power, cited: Pasch. Dig., art. 1335; Johnson v. Bowden, 43 Tex., 670; Peter v. Beverly, 10 Pet., 564.

On the proposition that the stockholders were necessary parties, they cited: Bank of U. S. *v.* Beverly, 1 How., 134; Sullivan *v.* Portland & Kennebec R. R. Co., 4 Otto, 806; Estes *v.* Browning, 11 Tex., 237; Dunlap's Adm'r *v.* Wright, id., 597.

WATTS, J. COM. APP.— According to the allegations in the petition, Mrs. Anderson's will bore date May 30, 1860, and was probated in 1866. It is also alleged that Fielding Jones, one of the executors nominated in the will, died during the life of the testatrix Mrs. Anderson, and that F. S. Stockdale qualified as executor, and as such executor has conveyed the several tracts of land mentioned in the petition. The point made and insisted upon is, that, as Jones and Stockdale were nominated joint executors, that notwithstanding Jones' death, Stockdale had no authority, acting alone, to execute the trusts created by the will. So far as is necessary for the consideration of the question presented, the following extract from the will is deemed sufficient:

"I appoint my uncle, Fielding Jones, and my cousin, Fletcher S. Stockdale, joint executors of this will, administrators of my estate and guardians of the person and property of my son Philip, and request them to accept the trust and office. It is moreover my will and desire that the county court shall have no further cognizance or control of my estate and its settlement than the registration of this will, and that my said executors and administrators shall have and exercise the fullest and most absolute control of my estate and of the person and property of my son Philip, that is accorded and permitted by law."

The doctrine that where a power is given to two or more persons by name, without any words of survivorship, that it cannot be exercised by the others alone, after the death or renunciation of any one of the trustees, has been recognized and applied for ages. And prior to the passage of the act of 21 Henry VIII., ch. 4, that doctrine was applied by the English courts alike to executors and other trustees. By the terms of that act executors were exempted from that rule, as it was therein provided that the qualified and acting executor may execute the will when the others "do refuse to take upon him or them the administration and charge of the same testament and last will wherein they be so named as executors."

At the date as well as the probate of the will of Mrs. Anderson our statute provided: "When a will shall have been probated, it shall be the duty of the court to grant letters testamentary to the executor or executors appointed by such will, if any there be, or to

such of them as are not disqualified and are willing to accept the trust and qualify according to law within twenty days after such probate." Pasch. Dig., art. 1268.

It was in effect provided by art. 1335, Pasch. Dig., also then in force, that where there was more than one executor named in the letter and one or more of them refused to act, the others might return an inventory, and should thereafter have the whole administration.

These provisions of our statute, it has been correctly held, engrafted upon our probate system the principles of the act of 21 Henry VIII., ch. 4. And as a sequence thereto, the doctrine that joint trustees must act together in the execution of the power has no application to executors nominated as such, but that when one or more of such executors are unable to act, or refuse to qualify, or refuse to act, the others might qualify and execute the trust. Johnson v. Bowden, 43 Tex., 670; Blanton v. Mayes, 58 Tex., 422.

As applied to what are termed independent wills the general doctrine is subject to exceptions and limitations, dependent upon the terms of the will. For an illustration of which, see Blanton v. Mayes, *supra*.

As an original question, the writer might doubt the application of the doctrine to independent wills to that extent which would authorize less than all the executors named to execute their provisions independently of the probate court; still it must now be considered as settled by the case of Johnson v. Bowden, that when there is nothing in the terms of the will that indicates a different intention upon the part of the testator, that doctrine applies with full force, and such wills may be executed by a less number than all of the executors nominated therein, under circumstances named in the statute, independently of the probate court.

However, it is insisted that the language of the will now being considered indicates that the testatrix intended that the two executors nominated in the will should act together and in no other way. This is claimed to result from the use of the word "joint" in connection with the nomination. But if that term had not been used, and the two nominated had qualified under the will, they would have been joint executors. So it would seem to follow that the testatrix did not intend more by the use of that word than would have been implied by law without its being used. The power is conferred upon the executors as a class, to be exercised by virtue of their office as executors. And it seems to be settled that, where the power is thus conferred, it may be exercised by any one of the executors

named, in the event the others are disqualified or refuse to act. Johnson *v.* Bowden, *supra;* Wardwell *v.* McDowell, 31 Ill., 364. Again, as a general rule, the will speaks at the time of the death of the testator or testatrix, and not before that time. Redfield on the Law of Wills, vol. 1, 379, etc.

It appears that Jones died before the testatrix; that notwithstanding his death she made no change whatever in the will. Thus if the will with reference to the executor is to speak only from the death of the testatrix, but one executor was in fact appointed. For as Jones was then dead, the legal effect upon the will would doubtless be the same as if his name had not been mentioned therein.

The fact that Mrs. Anderson failed to make any change in the will, with reference to the executors named, after the death of Jones, considering the provisions of the statute then in force as quoted above, is a potent circumstance tending to the conclusion that she was satisfied with Stockdale as sole executor, and intended that he should act as such.

Our conclusion upon this branch of the case is, that Stockdale had the right to qualify as executor, and to exercise all the powers conferred by the will.

And the next question in order for consideration is as to the extent of the power conferred by the will. The language is "that my said executors and administrators shall have and exercise the fullest and most absolute control of my estate, and of the person and property of my son Philip, that is accorded and permitted by law." The expressed intention was that the will should be carried into effect independently of the county court. And while there is no express power to sell and convey real estate, nevertheless if it should become necessary to do so in paying debts, or carrying out executory contracts of the testatrix, such power would be implied from the language used, when considered with reference to the fact that the estate was to be administered independently of the county court. The testatrix must have intended that the executor should have and exercise such power as would be necessary to accomplish that object. This is deriving the power, not from express grant, but by necessary implication.

In Blanton *v.* Mayes, *supra*, it was said: "The terms 'manage' and 'control,' standing alone and unaided by other considerations, could not be considered as conferring a power to sell." The usual and ordinary signification of the word "control" is the same as the word "manage," which is to have authority over the particular matter, to check, to restrain, to govern with reference thereto. The

language used in conferring the power is in legal effect the same as if it had been "entire control of my estate so far as is accorded and permitted by law."

The extent of the power as thus conferred would be to do whatever was necessary in and about the administration of the estate. But it is not believed that the executor, under the terms of the will, would have the power to sell and convey the lands of the estate at his discretion, or for any other purpose than the payment of debts, or carrying into execution the executory contracts with reference to lands made by the testatrix. A conveyance made by the executor for any other purpose would be without authority, and no title would pass thereby. It would not stand upon the same footing as one based upon a defective or irregular execution of a power, which equity would aid or time cure. Connolly v. Hammond, 51 Tex., 635. While such a conveyance might be made the basis for the defense of limitations, no facts are alleged which show that appellant is barred from asserting his rights as against such deed. And as his is a legal title, the doctrine of stale demand cannot be invoked against him.

It is claimed by appellant that the judgment in favor of Johnson and against Levi Jones was barred by limitations at the time of the conveyance by Stockdale to Johnson, July 27, 1868. The judgment was rendered June 3, 1853, for the sum of $17,367. And the position is assumed by appellant that it was barred, and therefore afforded no authority to Stockdale to make the conveyance.

Without expressing any opinion as to what might be the effect upon the question by reason of the provisions of the constitution of 1869, it will be remembered that all limitations as to money demands, suits, etc., were suspended January 28, 1861, and remained so suspended until September 2, 1866. Then, counting from the date of the judgment to the 28th day of January, 1861, and it will be seen that limitations had run for seven years, seven months and twenty-five days. And counting from the 2d day of September, 1866, to July the 27th, 1868, date of conveyance from Stockdale to Johnson, will give one year, ten months and twenty-five days, which, when added together, make nine years, six months and twenty days, as the greatest length of time that limitations could have run against that judgment, whereas ten years was the shortest period in which the statute would bar a judgment. P. D., art. 4608.

By reason of the execution of the instrument to Jones, of April 24, 1855, the lands situated in Jackson and Calhoun counties therein described stood bound for the payment of that judgment. Mrs.

Anderson therein admitted that she had not paid value for the land, and that the judgment in part was for the purchase money thereof. Upon these facts Johnson could have subjected the land to his judgment; and undoubtedly she was prompted to the execution of the instrument in order to avoid this, and secure time to have the conflicting titles to the same settled.

No payments are shown to have been made upon the judgment; therefore, it would amount to about $40,000 at the time of the conveyance from Stockdale to Johnson in 1868. As has been seen, Stockdale, as such executor, was authorized to make the conveyance; for, while that judgment was not against Mrs. Anderson, still it as effectually bound the land as if it had been against her in person.

So far, then, as this branch of the case is concerned, the court below correctly sustained the demurrer to the petition.

After the conveyance to Johnson, the interest the estate retained in the Calhoun county lands was three-eighths of one league, which from the allegations in the petition seems to have been conveyed by Stockdale as executor to the trustees of the Indianola City and Land Company.

For what purpose this conveyance was made is not shown by the allegations in the petition; but from the recitals in the instrument creating the joint stock company, it appears that shares of stock were to be issued to Stockdale as executor in consideration of the land. As has been seen, such a conveyance by him would not be authorized by the will.

But it is here claimed that there was a non-joinder of parties defendant, in that the stockholders of the company were not made parties. The instrument creating the company vested the legal title to the land in the trustees, and conferred upon them complete power over the same, including that to convey the land or any part thereof.

In Kerrison v. Stewart, 3 Otto, 160, Chief Justice Waite delivering the opinion of the court, said: "It cannot be doubted that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subject to such obligations that those for whom he holds will be bound by what is done against him, as well as what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effect if he does. If he has been made such a representative, it is well settled that his beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust; or to one by a

stranger against him to defeat it in whole or in part. In such cases, the trustee is in court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party."

Here the trustees come within that principle, and it was not necessary to make the stockholders parties to the suit.

It is in effect alleged that Stockdale was, at the filing of the suit, acting as the executor of the last will of Mrs. Anderson. Under that allegation, so far as Stockdale is concerned, appellant's right to an account would not be barred by limitation.

Then it was error for the court to sustain the demurrer to and dismiss the petition upon that ground.

Under our liberal system there is no valid objection to joining in the same proceeding the executor and the trustees of the Land Company, and thereby securing an adjudication of the whole matter in one and the same proceeding. These matters are intimately connected and all grow out of the matter of the estate.

The other matters are not so alleged as to require any consideration.

Our conclusion is that the court erred in the particulars indicated, and that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.