## BECKER et al. v. AMERICAN NAT. BANK.
### (No. 6995.)

(Court of Civil Appeals of Texas. Austin. June 23, 1926. Rehearing Denied Oct. 4, 1926.)

**1. Executors and administrators ⬅98—Independent executor may borrow money with which to pay estate's debts and bind estate for loan for that purpose (Rev. St. 1925, arts. 3427-3436).**

Under Rev. St. 1925, arts. 3427-3436, independent executor may borrow money, when necessity arises, with which to pay estate's debts, or to carry on estate's business, and may bind estate for loan for that purpose.

**2. Executors and administrators ⬅124—Estate held liable for proceeds of note used by coexecutor in paying debts of estate, where other coexecutors concurred in loan and note.**

Estate *held* liable for proceeds of note executed by coexecutor, which he used in paying debts of estate, irrespective of Rev. St. 1925, art. 3431, where will authorized him to bind estate, and other coexecutors concurred in loan and note; it being immaterial that coexecutors' own mismanagement of estate's affairs brought about necessity for the loan, where lender knew nothing of such mismanagement.

**3. Estoppel ⬅72.**

Wherever one of two innocent persons must suffer by acts of third person, he who enables such third person to occasion the loss must sustain it.

**4. Appeal and error ⬅705—Refusal to award plaintiff execution against all property of estate held not to show fundamental error, where record did not disclose upon what theory part of estate's property was exempted.**

In suit against estate on note of coexecutor, refusal to award plaintiff execution against all property of estate *held* not to present fundamental error on plaintiff's cross-assignment of error, where record did not disclose on what theory part of property of estate was exempted.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the American National Bank against Hermann Becker and others, executors of the estate of Charles Wolf, deceased. Judgment for plaintiff, and defendants appeal, and plaintiff cross assigns error. Affirmed.

Hart, Patterson & Hart, of Austin, for appellants.

Garrett, Brownlee & Goldsmith, of Austin, for appellee.

BLAIR, J. The question on the appeal is whether the note sued upon for $6,500, dated July 15, 1924, payable to appellee, and signed, "Franz Fiset, Executor Estate of Chas. Wolf, Dec'd," is a valid and subsisting obligation of said estate. The note is the last of a number of renewal notes executed in renewal and extension of an original note for $6,500, dated April 10, 1914, all signed by Fiset in like manner to the one in suit. The will of Charles Wolf appointed Franz Fiset, Hermann Becker, and Charles Kuse joint independent executors, and they qualified immediately after the will was probated. Kuse died shortly after qualifying, and the other two continued as executors until Fiset's death by suicide in November, 1924, when T. H. Davis and J. H. Hart were appointed under provision of the will to succeed Fiset and Kuse, and they with Becker are now the independent executors of the estate, and the three are appellants here in that capacity. Appellee alleged that the note represented money loaned to Fiset as executor of the estate; that it was borrowed with the consent, acquiescence, and approval of his coexecutors, for the use and benefit of the estate; and that it was so used.

The defense was that the will made the power of the three executors joint and concurrent; that neither of Fiset's coexecutors knew of, authorized, nor concurred in the loan or the execution of the note; and that Fiset, acting alone and without the knowledge, consent, or concurrence of his coexecutors, did not, under either express or implied provision of the will, have authority to bind the estate by the loan or note.

Appellee replied that, if the will did not authorize Fiset to act alone in the execution of the note, appellants were estopped to deny it as an obligation of the estate, first, because all the executors held Fiset out to appellee as having authority to execute it, and, with full knowledge and means of knowledge as to the source of the $6,500, retained and used it in payment of valid obligations of the estate, and, second, because the will required the executors to pay all debts of the estate and improve and repair its property; that by its terms Fiset, alone, was given absolute dominion and control over the personal property, the fiscal affairs, and business matters of the estate; that he drew the will; that he was then, and for a long time prior thereto, the trusted friend, attorney, and adviser of testator; that he was made attorney for the estate by the will; that he, his coexecutors, the surviving widow, and such children as were of age construed the will to give Fiset, acting alone, full dominion and control over the personal property and fiscal affairs of the estate; that they acquiesced in and ratified all his acts with reference to his exclusive management and control of the fiscal affairs of the estate; and that each of them, from time to time, accepted compensation and distribution out of the funds of the estate from Fiset, acting alone as independent executor under that interpretation of the will, and demanded no accounting from him in such capacity.

Appellants replied that neither of Fiset's coexecutors nor any of the beneficiaries knew

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of, or authorized the loan or the use of the money, and repudiated the note as soon as they learned of it.

A trial to the court resulted in judgment for appellee for the amount of the note, interest, and attorney's fees, with an award of execution against any property of the estate, except the business property situated in Austin. The substance of the conclusions of law upon which the judgment is based is: (1) The will of Chas. Wolf authorized Fiset, acting alone, as independent executor to execute the note: (2) the coexecutors concurred, consented to, and acquiesced in the creation of the debt by Fiset, acting alone, in the execution of the note; (3) the money received on the note was expended by Fiset with the knowledge, consent, and concurrence of his coexecutors for the use, benefit, and preservation of the estate, and appellants were estopped to deny it as an obligation of the estate.

Appellants contend that the will is not susceptible of the construction placed upon it by the first conclusion, and that the second and third are not supported by any evidence. Neither contention is sustained.

Wolf's will is a lengthy and carefully prepared instrument. Becker, Kuse, and Fiset were appointed "sole executors of this my last will." The manner for appointing their successors in case of death was provided. The executors were to act independently of the probate court, and no bond was required of them. After paying the debts, they were to become trustees for the purposes of carrying out the provisions of the will. Article XII reads:

"I hereby give and grant to my said executors, when qualified, full and absolute dominion over the property of my estate, and they are hereby authorized, according to their discretion, to manage, control and dispose of same, sell, convey or encumber same—saving and excepting that they are not authorized to sell or encumber any business property belonging to my estate situated in the city of Austin."

The executors or trustees were to pay debts, collect or compromise debts owing the estate, pay legacies and monthly stipends to the widow and children, manage the property, sell or encumber it, except the Austin business property, improve by erecting new buildings or by improving old ones, rent the properties, invest and reinvest the money of the estate, and to do all things that the testator could have done until 1925, when a portion of it was to be partitioned. A general clause of the will provides:

"I further hereby direct that in all matters pertaining to the affairs of my estate, the concurrence of two of my executors or trustees shall be deemed sufficient and legal for all purposes, saving and excepting that in regard to the sale and conveyance of real estate the concurrence of the three executors or trustees is required."

This is immediately followed by a special provision which reads:

"I further hereby direct that my executors and trustees shall be paid such commissions as are allowed under the laws of the state of Texas as to administrators of estates. But I further hereby direct that all matters of personal property belonging to my estate shall be left to my executor and trustee, Franz Fiset, and that he shall for the attention paid said matters be paid in addition to the above commissions, such reasonable attorney's fees as his professional services are entitled to; and that he shall also act as the attorney concerning any other matters of my estate requiring legal services, and that for such services he shall, in addition to the above, be paid the reasonable attorney's fees that may be proper for the services that he may render."

Wolf died in 1913, and Fiset immediately qualified as temporary administrator of his estate pending the probation of the will. He opened an account in appellee bank in the name of "Franz Fiset, temporary administrator of the estate of Charles Wolf, deceased." Shortly after the three executors qualified, they met in Fiset's office "for a discussion about how the affairs of the estate were to be conducted." Each executor was the intimate personal friend of the testator. Fiset was also his attorney and legal adviser, and was appointed attorney for the estate by the will. He drew the will and construed it to mean that he had absolute dominion acting alone with reference to the management and control of the personal property and the fiscal affairs of the estate. With reference to this Becker testified:

"Mr. Fiset told us that the provisions of the will meant that he was to have charge of handling the personal property of the estate, and that Mr. Kuse and I would look after the real estate."

In this construction the coexecutors agreed, and on July 24, 1913, Fiset caused to be transferred $7,817.59 from the temporary administrator's account to the account of "Franz Fiset, executor of the estate of Charles Wolf, deceased," in appellee's bank. From that time on Becker and Kuse, up to the time Kuse died, and thereafter Becker, as well as the widow and children who were of age, understood or construed the will as giving Fiset specific and exclusive control and authority over the personal property and fiscal affairs of the estate; and all of them from time to time accepted checks signed by "Franz Fiset, Executor Estate of Chas. Wolf, Dec'd," drawn against the account so opened in appellee's bank. They construed the will to give Fiset authority to invest the funds of the estate. He paid all the debts, legacies, and stipends that were paid. No books were kept by Fiset other than the account in appellee's bank. No books were kept by the other executors. At the first meeting of the executors they employed an agent to collect the rents, and in-

structed him to pay them to Fiset, which he did. The agent kept books with reference to the rents and how he disbursed them.

The inventory showed the estate owned real property of the value of $201,901.25, consisting of Austin business property; a 180-acre farm in Travis county, and a smaller one in Bastrop county, and uncultivated lands in some thirteen other counties; promissory notes valued at $53,344.19; cotton of the value of $1,000; and $8,607.97 in money.

Fiset took charge of the personal property, collected the notes, and about $110,000 of rents were paid to him. A small amount of the real estate was sold and the proceeds paid to him. For debts, repairs, commissions, salaries, legacies, and monthly stipends to widow and children he paid out about $80,000 during the little more than 10 years that he administered the estate. At the time of Fiset's death the estate had nothing except the real estate left, which the court valued at $275,000. What became of the balance of the money belonging to the estate is not shown. A portion of a pencil memorandum left by Fiset when he committed suicide reads:

"I have spent everything in stock gambling trying to make everybody rich."

Many worthless German bonds were found among his papers. The estate's bank balance was $39. The memorandum also mentioned many defalcations and forgeries with reference to Wolf's estate and many of Fiset's other affairs; but neither the coexecutors nor appellee bank knew of these until after his death. He had the reputation of being honest and trustworthy in every respect. He was a man of large affairs, and, as a lawyer and a financial agent, represented many clients whose affairs were involved in his break. He told his coexecutor Becker, from time to time, that he was investing the estate's money and that everything was running smoothly. When Becker asked for an accounting, he told him that was his (Fiset's) business, and he would render an accounting in 1925 when the partition was to be made. Fiset was domineering, and would dismiss his coexecutor's inquiry about the affairs of the estate with the statement, "That is none of your business," or other like statements.

On April 10, 1914, Fiset executed the original note of which the one in suit is the last renewal. He represented to H. A. Wroe, president of appellee bank, that the Wolf estate needed money with which to pay its debts. Fiset was a customer of appellee bank, and was well known and trusted by it. The estate at that time owed more than twice the amount of the note in suit. It had only $39.76 to its credit in the "Franz Fiset, Executor Estate of Chas. Wolf, Deceased," account in appellee bank at the time the loan was sought. The bank made no inquiry of the other executors, nor did it examine the will which had been probated. Fiset did not apprise his coexecutors of the fact that he had executed the note, and neither they nor the heirs of Wolf knew it had been executed until after Fiset's death. The $6,500 was credited to the executor account in appellee bank and checked out by Fiset in payment of valid debts of the estate, including taxes, court costs, repairs on buildings, etc. The facts related are practically undisputed.

[1] It is well settled in Texas that an independent executor may borrow money when the necessity arises with which to pay the estate's debts, and that he may bind the estate for a loan for that purpose. Or where a will requires a plantation, manufactory, or business belonging to the estate to be carried on, the independent executor or executors may borrow money to do so, and bind the estate for its payment. Articles 3427–3436, R. S. 1925; Altgelt v. Bank (Tex. Civ. App.) 79 S. W. 582; Armstrong v. O'Brien, 83 Tex. 639, 19 S. W. 268; Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367; Altgelt v. Oliver, (Tex. Civ. App.) 86 S. W. 29.

[2] The special provision of the will last quoted gave Fiset, acting alone, full and exclusive control and management of the personal property and fiscal affairs of the estate, and, if it became necessary for him to borrow money with which to pay the estate's debts while acting in such special capacity and under the special authority given, he was authorized to do so, and to bind the estate for its payment. The will provided that the executors carry on testator's business of renting and managing his business property and farms, and manage and control the estate the same as testator could, if living. The will authorized them to borrow money or encumber the estate, except Austin business property. It authorized Fiset, acting alone, to attend to the personal property and fiscal affairs, invest its money, and pay its debts.

The time came when Fiset, acting alone as to the fiscal affairs of the estate, needed money with which to pay its valid debts, most of which were owing by testator at the time of his death. The loan was applied for by Fiset, as executor, for the purpose of paying debts of the estate. The loan was made by appellee in good faith. The proceeds of the loan were used to pay the valid debts of the estate. Under such state of facts, fairness and equity would require the estate to pay the loan. The fact that Fiset's own misconduct or mismanagement of the estate's affairs may have brought about the necessity for the loan cannot affect the estate's liability for the loan or note, since it is undisputed that appellee knew nothing of the misconduct or mismanagement. Neither can the fact that the estate's monthly income was much more than was necessary to pay its debts and expenses have any bearing upon the question. The executors and Fiset construed the will to give Fiset, acting alone, the authority to invest the money belonging to the estate. If by in-

vestment Fiset reduced the cash on hand so as to necessitate the borrowing of money with which to pay the estate's debts, we think a reasonable construction of the will would authorize him to do so. The testator contemplated that such necessity might arise, for he directed that the executors might encumber his estate, except Austin business property. Fiset made no attempt to encumber any property of the estate by the loan. The estate had on deposit only $39.76 on the date the note was executed. The loan was deposited with and commingled with the other funds of the estate. Checks were issued by Fiset, as executor, against the account in payment of the estate's valid debts until it was exhausted some three or four months after the loan was made.

Appellee insists that the estate's liability for the note is fixed by article 3431, R. S. 1925, which reads:

"Should there be more than one executor or administrator of the same estate at the same time, the acts of one of them, as such executor or administrator, shall be as valid as if all had acted jointly; and, in case of the death, resignation or removal of an executor or administrator, if there be a coexecutor or coadministrator of such estate, he shall proceed with the administration as if no such death, resignation, or removal had occurred."

The same article was embodied in the 1911 R. S. as article 3356; in the 1895 R. S. as article 1989; and in the 1879 R. S. as article 1936. The Supreme Court has construed the article to apply where one or more independent executors refused to qualify or act, as conferring on the one or more who did qualify power to act and bind the estate, even though by general terms the will made them joint executors. Article 3356, Vernon's Sayles' Statutes 1914, and Vernon's 1922, and annotation of cases under article. See, also, article 3431, Vernon's 1925 Statutes, and cases there annotated. In Armstrong v. O'Brien, 83 Tex. 639, 19 S. W. 268, the article is held to authorize the admission of a letter signed by one joint executor as against them all.

It has been held in substance that where a will is silent as to the number of executors required to bind the estate, the article applies and one may bind the estate, even though by general terms the will makes them joint executors. Johnson v. Bowden, 43 Tex. 670; Blanton v. Mayes, 58 Tex. 422.

In the case of Anderson v. Stockdale, 62 Tex. 60, the commission of appeals expressed some doubt with reference to the application of the article to wills which require a certain number to act in order to bind the estate. To construe the article to apply to a will which provides that a certain number more than one must act concurrently in order to bind the estate, would, in effect, abrogate such a provision. But the liability of the estate for the note in suit is not dependent upon the article, for we have concluded that

Fiset alone could bind the estate by special provision of the will; and we are also of the opinion that the undisputed evidence shows that Fiset's coexecutors concurred, consented to, and acquiesced in the loan and note, and for which reason the estate is bound to pay it. By general provision the will required that "the concurrence of two of my executors or trustees shall be deemed sufficient and legal for all purposes." Kuse died shortly after the note in suit was executed; and, so far as the record discloses, he met with the coexecutors and construed the will as conferring upon Fiset management and control of the personal property and fiscal affairs. That Becker in fact and in law concurred in the execution of the note by Fiset is established beyond question by his own testimony, from which we quote the following:

"We did not talk about that, but it was generally understood that he was to have charge of the personal property. As to whether Mr. Fiset told Mr. Kuse and myself from the very jump that what he did with the money was his business, that he had authority under the will to handle the personal end of it, he said something like that, not exactly that. I went up regularly every month, we were together every month an hour or two; and we discussed about the property and everything, and as soon as I would come to the money, he would say, 'That is my business, you have nothing to do with it, and everything is running smooth. * * * Each month I would have a conference with Mr. Fiset, and we would discuss the affairs of the estate. When it would come down to a question of what he was doing with the money, he would tell me that was his business under the will. Of course, I knew that the indebtedness of the estate, such as improvements and building the storehouse down on Congress avenue, under contract with Fischer & Lambie had to be paid. It was Mr. Fiset's business to pay for that, but when we came to building we considered it closely together, and the lowest bidder would get it, and when we agreed on it Mr. Fiset was mostly done. * * * Mr. Fiset always paid the taxes; that was his business. * * * During the time that Mr. Fiset was one of the executors and trustees of the Wolf estate, Mr. Kuse and I during his lifetime always looked to Mr. Fiset to handle the fiscal and financial affairs of the Wolf estate, and after Mr. Kuse's death, I looked to Mr. Fiset to handle those affairs. We absolutely depended upon him to attend to that, to finance it, and so on, and he did attend to all the fiscal affairs of the estate. I attended only to that portion of it that related to the real estate, and I did that in connection with Mr. Fiset, Mr. Thaxton, and Mr. Kuse, during his lifetime. I stated this morning that when I asked Mr. Fiset about the money matters belonging to the estate, he would tell me that that was a matter with which I was not concerned, that that was exclusively under his jurisdiction under the will. That is the way I understood it, and Mr. Kuse also understood it that way—that it was all left to Mr. Fiset. * * *

"I kept familiar with the estate and how it was being managed all the time. * * * I depended upon him to look after all the affairs

of the estate outside of land. Anything concerning money matters I left to Mr. Fiset. I just left all money matters to him; I considered all that a personal matter; he told me he had that under him, and I recognized that as a fact and did not bother myself about it. * * * I had to just leave everything to Mr. Fiset, that is the way I considered it, that I just had to leave everything to him with reference to any fiscal affairs of the estate; he demanded it, and I had confidence in him that he did the right thing. * * * I never required checks to be signed by anybody else than Mr. Fiset. ·I thought he had absolute dominion over all fiscal affairs of the estate. * * * With reference to paying any debts of the estate, that was Mr. Fiset's business. * * * I thought Mr. Fiset attended to the estate in such a way like it ought to be attended to, and he had plenty of money on hand and could have paid all the debts. I had to leave the whole matter to him."

With reference to an accounting by Fiset, Becker testified:

"With reference to not demanding any accounting or statement from Mr. Fiset. showing how he was investing or expending the money of the estate, I did ask him more than once for that, but he said that by the will he gives a statement on the 1st of May, 1925, when the division comes. I asked him more than once, but he would make no statement until then. As to whether I then just went off and left it as it was before, I had to do that; I could not do any better. I regarded that I had no say so whatever about any personal property belonging to the estate, or its investment, or expenditure, regardless of the source from which the money came."

[3] For ten years the note was renewed, and interest paid on it by Fiset with checks drawn against the executor account in appellee bank. Fiset by his act represented that he had authority to execute the note. Becker and Kuse permitted him to do so, for with their acquiescence and consent he opened the account in appellee bank, as executor, in his name alone. They had implicit confidence in him. He managed the estate alone in its entirety, the coexecutors acquiescing and concurring. They held him out to the world as the sole fiscal agent of the estate. They interpreted the will, then probated, as giving Fiset that authority. The will was susceptible of that interpretation. The coexecutors did not keep books, and did not concern themselves with the financial condition of the estate, nor so much as required an accounting of Fiset, the fiscal agent. Appellee acted to its injury upon Fiset's representation that he had authority to bind the estate. Fiset was the trusted friend and adviser of testator, drew the will, and interpreted it as giving him the authority to execute the note. The will appointed him attorney for the estate. The proceeds of the note were paid upon the valid debts of the estate. Under such facts and circumstances the coexecutors must be held to have concurred in the loan and note, and they are surely estopped to now deny Fiset's authority to execute the note. 21 C. J. 1060, § 8, note 14. The rule for this is expressed in the well-established principle that wherever one of two innocent persons must suffer by the acts of a third person, he, who enables such third person to occasion the loss, must sustain it.

[4] Appellee cross-assigns as fundamental error the court's refusal to award it an execution against all the property of the estate. The judgment provides that execution shall not issue against Austin business property belonging to the estate. But the record does not disclose upon what theory the Austin business property was exempted, and, therefore, it cannot be said to present fundamental error.

The judgment of the trial court will be affirmed.

Affirmed.

McCLENDON, C. J., not sitting in this case.