# Mary B. Leiper's Appeal.

1. A married woman may sell or give her personal estate to her husband, or, with his consent, to a stranger.

2. The doctrine of estoppel cannot be applied to the transactions of a married woman so as to supply her want of contractual power.

3. When persons are put upon inquiry as to the ownership of personal property, such as stocks about to be transferred, they must ascertain the facts from him whose act is necessary to give validity to the transfer.

4. A., a married woman, owning shares of stock in a National Bank, executed a power of attorney in blank authorizing their transfer and gave it with the certificate to B., her husband, who pledged it, with her assent, to C., a stock broker, as a margin to cover B.'s intended stock-broking transaction. C. fraudulently pledged the stock to D. for a loan. In an action by A. and B. against D. to compel the re-delivery of the certificate, *Held*,

(1) That the certificate and blank power of attorney did not clothe C. with the apparent indicia of ownership of the stock, and that D. was therefore put upon inquiry of the facts.

(2) That D. not having made such inquiry took merely C.'s actual right as against A. and B., and, there being nothing due from B. to C.,

(3) D., therefore, could not claim the stock as a bona fide pledgee for value.

January 20th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the decree of the Court of Common Pleas No. 2 of *Philadelphia county:* Of January Term, 1884, No. 308.

[Leiper's Appeal.]

This was a bill in equity filed by Mary B. Leiper and James G. Leiper in right of the said Mary against Charles Kane, administrator of E. H. Green, Edgar C. Gramm and William Sinnett, trading as Gramm & Sinnett; Franklin Dundore and Lafayette L. Webster, trading as F. Dundore & Co;· the National Security Bank, The Girard National Bank, The Philadelphia National Bank and The Corn Exchange National Bank to recover certain shares of stock in the banks named belonging to said Mary B. Leiper and to enjoin the transfer thereof.

The case was referred to Alfred Driver, Esq., as Examiner, and afterward to John R. Read, Esq., as Master, who reported that there was virtually no conflict as to the facts of the case which he found to be as follows: "That the said Mary B. Leiper is a married woman, the wife of the said James G. Leiper, and was on February 28th, 1881, the owner in her own right of the shares mentioned in the bill, the same having been purchased for her by her father, and that her husband did not contribute anything thereto, and the certificates therefore were in her name.

"That on February 28th, 1881, James G. Leiper, who had been speculating in stocks, and for whom said Green was acting as broker, being called on for margin, delivered the certificates in question to Green as such margin.

"That objecting to having the transfer on the back of the certificates signed, he was given blank powers of attorney in the usual form, which on the next day he delivered to Green, signed by Mary B. Leiper alone, in blank, and they were then, or shortly afterwards, filled up (except the blanks for the names of the transferee and attorney) by Joseph H. Straub, a clerk in Green's employ, and pinned to the certificates. They were then retained by Green to secure him against loss in the stock speculations.

"These stock transactions with Green were all wagering contracts, no stock being actually purchased or delivered by either party. Green died June 27th, 1882.

"The bonds and stock ordered by Leiper in the transaction remaining unsettled at Green's death had not been purchased by Green.

"On June 16th, 1882, one of Green's clerks went to the office of Gramm & Sinnett, and asked for a loan of $2,000, which was promised on delivery of collateral; and another clerk the same day delivered to them as collateral the ten shares of the Philadelphia National Bank, with the powers of attorney attached, still in the same form as when delivered to Green, except that the blanks had been filled as aforesaid. These were in the usual form, and on them, as collateral, said Gramm & Sinnett, in good ·faith and in the usual course of their business, advanced to said Green the sum of $2,000.

" On June 13th, 1882, F. Dundore & Co., on the delivery to them as collateral of the remaining shares mentioned in the bill, under precisely similar circumstances, in good faith and in the usual course of business advanced to the said Green the sum of $2,000."

The Master reported, inter alia, as follows: The Act of 1848, while disabling the husband, did not enlarge the wife's power to convey, and his consent is still necessary. It is necessary for him to join in the conveyance of her real estate, because it is so enacted in the Act of 1770. But that Act does not include personal property, and in the absence of statutory enactment, what principle of law or equity is there that will prevent her from disposing of her property with his consent, even if he does not formally sign the transfer? It is true that Keen v. City, 8 Phila., 49, does apparently decide that a transfer of stock signed by a married woman passes no title, but the facts of that case are not given, and it does not appear that the husband did, in fact, give his consent. Moreover, this case falls within the exception there stated, namely, that the wife can give her husband a power of attorney, and that was precisely what she did in this case. In any event it is opposed to the principle of the later cases of Brown's Appeal, 13 Norris, 362, and Powell's Appeal, 10 W. & C., 485. . . . . .

But the transaction may be viewed in another light, which is equally fatal to the plaintiff's claim. There is no testimony before the Master as to what took place between husband and wife at the time the power of attorney was signed. Straub testifies as to the manner in which they came into Green's possession as follows: " Mr. Leiper's margin was exhausted; nearly exhausted. He was called upon for more to protect certain transactions in stocks, and I believe he sort of objected to going to bank to borrow moneys, and I think I said to him, ' Jim, there is no need for you to borrow money on these stocks, we can use them just as well as they are,' and he assented to that and thought he would like it much better that way." And again, " Mr. Leiper brought these shares down to the office and said that he did not want them signed on the back; demanded blank powers of attorney; I gave him, I think, three, which he brought down signed. I pinned one on each respectively, and filled in the number of shares and the name of the stock in the power. I don't know whether he said anything about his wife or not."

Now conceding that in order to make a valid transfer of these shares to a stranger the joinder of the husband was necessary, yet it is clearly settled in the cases above cited, that a wife may transfer her choses in action to her husband, and

in such case *ex necessitate* her signature alone is sufficient. Here the certificates and a power of attorney in blank, signed by the wife, were delivered to the husband, which beyond question vested him with the indicia of ownership, and so far as innocent parties were concerned, conferred upon him the power to deal with the certificates as his own, and the rule laid down in Wood's Appeal would apply to the present case. And even assuming that she merely gave the shares of stock to him for the purpose of pledging, "if," as is said in Duffy *v.* Insurance Co., 8 W. & S., 433, "a wife unite with her husband to pledge her estate or otherwise to raise money out of it to pay his debts or meet any other occasion for his accommodation, whatever may be the mode or form adopted to carry such purpose into effect, the transaction will in equity be treated according to the true intent of the parties."

In either point of view the transaction was binding on Mrs. Leiper.

The Master further decided that the circumstances of the case were not sufficient to put the defendants upon inquiry; and in support of this position cited Wood's Appeal, 11 Norris, 379; Burton's Appeal, 12 Id., 214; and Pennsylvania R. R. Appeal, 5 Id., 80. The Master's conclusion was that "The complainants undoubtedly are entitled to a decree against Charles Kane, administrator of E. H. Green, deceased, for the value of the bank shares to be paid out of any assets of the estate of his decedent, that now are or may hereafter come into his hands, but there is no testimony as to the value thereof, and the Master cannot report a decree therefor, and he therefore recommends that the plaintiffs' bill be dismissed with costs."

Exceptions filed to this report were dismissed by the court, and a modified decree as afterwards recommended by the Master was entered directing the defendants, F. Dundore & Co. and Gramm & Sinnett, to deliver to the complainant, Mary B. Leiper, the certificate of stocks in their possession upon payment by her in a time specified of the sums loaned by them on the security of the stock, and in case of her failure so to do that the bill be dismissed.

Whereupon the plaintiffs, Mary B. Leiper and James G. Leiper, took this appeal, assigning for error the entry of above decree, and the action of the court in not entering a decree for the unconditional transfer and delivery of the certificates of stock by the respondents to the complainant.

*John G. Johnson* (with whom was *Frank P. Prichard*), for the appellants.—The husband and wife must join in any disposition of the wife's property: Peck *v.* Ward, 18 Pa. St.,

506; Haines v. Ellis, 24 Id., 253; Moore v. Cornell, 68 Id., 320; Bond v. Bunting, 78 Id., 210; Keen v. Philadelphia, 8 Phila., 49. It is conceded that the transfer to Green as collateral was valid, although the husband's consent was orally given. Green's right passed to his assignees, and of the indebtedness still existed by the husband to Green, the transfer by the wife with the consent of the husband would be valid. But the defendants purchased, not from the husband, but from Green, and claim to ignore the real transaction between plaintiff and Green on the ground that they had a right to rely on the latter's apparent title. As the power of attorney contained no indication of the husband's joinder or consent, .Green had no apparent title at all. Hence the defendant must fall back on Green's real title, valid as far as it went but which being only as collateral security, had expired with the indebtedness. Mrs. Leiper is not estopped from asserting her title: Glidden v. Strupler, 52 Pa. St., 400; Quinn's·Appeal, 86 Id., 447; Buchanan v. Hazzard, 95 Id., 240; Innis v. Templeton, Id., 262. See also People v. Bank of North America, 75 N. Y., 547; Merriam v. Boston, 117 Mass., 241. In Brown's .Appeal, 13 Norris, 362; Dando's Appeal, 13 Norris, 76; Powell's Appeal, 2 Out., 403, the party claiming had received the conveyance directly from husband and wife—not from a .stranger, as here. The respondents were put on inquiry as to ·Green's title: Tayler v. Great Ind R. R., 4 DeG. & J., 559; Baring v. Corrie, 2 B. & Ald., 137; Ellis' Appeal, 8 W. N. C., 538.

*G. Heide Norris* and *David W. Sellers*, for the appellees.— Green was clothed with the full indicia of ownership. § 5139 of the National Banking Act is silent as to any disability of a married woman to transfer stocks. The state law, therefore, governs, and the Act of April 1, 1874, gives express authority to married women to transfer bank stock. This case is the same as if the stocks had belonged to·her husband and he had placed them with the broker upon the same conditions and restrictions which were afterwards abused. The cases of Wood's Appeal, Burton's Appeal and Pennsylvania R. R. Co.'s Appeal rule·this.

Mr. Justice TRUNKEY delivered the opinion of the court, March 16th, 1885.

That a married woman may sell or give her personal estate to her husband, or with his consent, to a stranger, has been .settled, and is uncontroverted. The appellants concede that a wife may make a written transfer of the personal property, if her husband's consent be orally given, and that the transfer

of the stock to Green to hold as collateral security, was valid. They further concede that Green's rights passed to his assignees and that they would be entitled to the benefit of the security if indebtedness by Leiper to Green still existed. But they deny that Green's transferees who claim to have taken the stock from him on the faith of his ownership, have any other title than was vested in Green, which title expired by the extinction of the indebtedness. They rest their case mainly on the point that the transfers signed by Mrs. Leiper, on their face, failed to clothe Green with apparent ownership of the stock, and therefore his pledgees were put upon inquiry respecting his title.

The Master was of opinion that the husband's assent to the transfer of the stock in controversy was essential to its validity. Of the correctness of this there can be no doubt. Numerous statutes have been enacted authorizing married women to make executory contracts, releases, and sales and transfers, in particular cases. For instance, the Act of March 18th, 1875, empowers a married woman owning loans of this Commonwealth, or of the city of Philadelphia, or any of the loans or shares of the capital stock of any corporation created by or under the laws of this Commonwealth, to sell and transfer the same as if she was unmarried. From such statutory provisions there is no inference that she has authority, without her husband's assent, to sell and transfer her shares of the stock of any corporation created by or under the laws of another state, or of the United States.

The powers of attorney signed by Mrs. Leiper, not being accompanied by written evidence of the assent of her husband, prima facie, were insufficient to vest the apparent title to the stock in Green. His right depended on oral and written evidence. Without oral testimony of Leiper's assent, the writing of his wife passed nothing. They did not confer upon Green by a written transfer, all the indicia of ownership of the stock—the written assent of the husband was wanting. Just here this case differs from Wood's Appeal, 92 Pa. St., 379; Burton's Appeal, 93 Id., 214, and other cases controlled by like principle, wherein the transferees not only found the possessors of the stock from whom they purchased clothed with written evidence of ownership, but no circumstance to put them on inquiry. The fact that Mary B. Leiper alone signed the powers was enough to warn purchasers or pledgees to ascertain whether she made the transfers with her husband's assent. Of whom would they inquire? Not of Green, who was offering to pledge the stock, but of him whose assent was essential to the validity of Green's title. Green, if fraudulently endeavoring to effect a sale or pledge, would likely say

nothing to defeat it, but assert whatever would advance his purpose. The husband, if called upon, would not only answer that he gave consent, but also state that the stock was transferred to Green to hold as collateral security for a debt. In the natural order of inquiry they would ascertain the actual terms of the transfer, and take the stock subject to those terms.

If Green's pledgees believed that Mary B. Leiper was unmarried, she is not estopped. There is no pretence that she fraudulently represented herself single; but if she did, the doctrine of estoppel would not apply: Keen v. Coleman, 39 Pa. St., 299. They took the risk of her status. Persons who are legally incapable of contracting or disposing of their property, in the attempt to do so, do not become bound as if capable, because of omission, at the time of the transaction, to assert their incapacity.

Nor is this the case of a pledge by the husband of stocks given to him by his wife. The pledge to Green was good, for in that transaction the husband was an actor. But Leiper was no party to the pledge by Green. Had he made the pledge to the respondents, or been an actor in the making of it, then the position that the certificates and powers of attorney in blank, delivered to him by his wife, vested him with the indicia of ownership so that he could make a valid pledge of the stocks to innocent parties, might be unassailable. In fact, Leiper and his wife pledged the stock to Green as security. Aside from the rights of the pledgee, she continued absolute owner. In no instance did Leiper claim to own the stock. He did not clothe Green with the full indicia of title, and the appellees do not stand as innocent purchasers or pledgees from the apparent owner.

Upon the facts found by the Master it is clear that Mary B. Leiper is the owner of the stock, that the purpose of the pledge to Green was accomplished, and his representatives have no right to hold it, and that the appellees have no superior equity entitling them to retain possession for security of their loans to Green.

Decree reversed, and it is now considered and decreed, that the defendants, Franklin Dundore and Lafayette L. Webster, trading as F. Dundore & Co., within thirty days deliver to said Mary B. Leiper, certificate No. 759, dated June 28th, 1880, for twenty shares of the Corn Exchange National Bank, and certificate No. 1688, dated June 26th, 1880, for five shares of the Girard National Bank, and duly transfer to said Mary B. Leiper, and deliver to her the certificate or certificates in the name of F. Dundore & Co., for ten shares of the capital stock of the National Security Bank, issued to them in lieu of

certificate No. 361, dated March 27th, 1880, for ten shares of the National Security Bank.

. That the defendants, Edgar C. Gramm and William Sinnett, trading as Gramm & Sinnett, within thirty days, deliver to said Mary B. Leiper, certificate No. 2230, dated June 28th, 1880, for ten shares of the Philadelphia National Bank, in name of Mary B. Leiper.

That the defendants hereinbefore named in this decree pay the costs, including costs of appeal.

That the bill be dismissed as to the other defendants.

That the record be remitted for the enforcement of this decree.