## JACOB ULMER v. WILLIAM RYAN ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued March 25, 1890—Decided November 10, 1890.

(a) On August 3, 1881, the defendants, at Dubuque, authorized a broker in Chicago to " offer five car loads of fully cured pickled shoulders, average not above twelve pounds, at not below six and one half cents, f. o. b. Dubuque. " On August 5th, the plaintiff, at Pottsville, telegraphed to the broker to " buy two cars s. p. shoulders if choice seven."

Charge of Court below.

(*b*) On August 9th, the broker informed the defendants that he had sold two car loads of sweet-pickled shoulders " at 6.85 f. o. b. Dubuque," and requested them to send the same to his order at Pottsville. The shoulders were shipped, and a bill of lading describing the meat as " sweet-pickled shoulders " was forwarded to the broker, who reported the purchase and consignment to the plaintiff.

(*c*) The bill of lading was indorsed by the broker, and forwarded with a draft on the plaintiff for the price, which was paid. Before the meat was shipped it was inspected and found to be in good condition. When it reached Pottsville, it was spoiled and found to be unmerchantable. The defendants had no knowledge of the plaintiff's telegram to the broker at Chicago:

1. In such case, the telegram was not a part of the contract sued upon, nor an element in the decision of the cause; there was no implied warranty of the meat; the broker, when he bought, was acting for the plaintiff, but when he sold, he was acting for the defendants, and the rule, that notice to the agent is notice to the principal, had no application: Ryan v. Ulmer, 108 Pa. 332.

Before Paxson, C. J., Green, Clark, McCollum and Mitchell, JJ.

No. 55 July Term 1889, Sup. Ct.; court below, number and term not given.

In November, 1881, Jacob Ulmer brought assumpsit against William Ryan and Thomas J. Ryan, trading as William Ryan & Son. Issue.

At a trial of the case on November 20, 1883, there was a verdict for the plaintiff for $1,239.50. The judgment entered thereon, however, was reversed on error to No. 290 January Term 1884, Sup. Ct., with a venire de novo: Ryan v. Ulmer, 108 Pa. 332.

At the second trial, on January 16, 1889, the facts indicated in the syllabus hereof, and sufficiently appearing in the opinion of the Supreme Court, were shown, when Finletter, P. J., charged the jury in part as follows:

There is but a single question of law upon which it is my duty to instruct you, and that is, how the contract is to be considered by the jury. This instruction it is your duty to take from the court without question.

[The contract under which these shoulders were purchased and delivered, is as follows: " You may offer five car loads fully cured pickled shoulders free on board of the cars at Du-

Charge of Court below.

buque."] [1] [The defendants, by this contract, were bound to deliver fully cured pickled shoulders on board of the cars at Dubuque. If they did this, they filled all the conditions of their contract, and the verdict should be for the defendants.] [2] If they did not, the verdict should be for the plaintiff.

The plaintiff has shown that the shoulders arrived in refrigerator cars which were properly filled with ice; that they were properly used and treated, and that in a day or so they were found to be spoiled; that the treatment which they received, after their arrival at Pottsville, could not have injured them, or produced the condition in which they were found in the smokehouse. The plaintiff has also given evidence, the purpose of which is to show that if the shoulders had been fully cured pickled, they would not have spoiled. If this evidence does not satisfy you that the shoulders were not in proper condition at the time they were put upon the cars at Dubuque, you need not inquire further, and your verdict should be for the defendants. On the other hand, if you are so satisfied, you will consider the evidence given by the defendants. They have shown that the shoulders were properly inspected, one by one, at the time they were shipped at Dubuque. . . . . In addition to the evidence of inspection, the defendant has given evidence the object of which is to show that the shoulders were spoiled by the manner in which they were treated, in their transit from Dubuque to Pottsville, and also especially by the manner of their treatment by the plaintiff and his workmen. . . . .

How salted meat should be treated in transportation, or storage, or in process of being smoked, is a matter about which the jury must rely upon the evidence of experts. [All the proper evidence in this case must have reference to and show the condition of the shoulders when they were placed upon the cars at Dubuque; and it must show that at that time they were or were not fully cured pickled shoulders.] [3] If the evidence satisfies you that they were not, then your verdict should be for the plaintiff, for the amount of damages which he has shown you by the evidence to have suffered, and with interest to the present time. [If, however, you are satisfied that at the time they were shipped at Dubuque they were fully cured pickled shoulders, then your verdict should .be for the defendants.] [4]

Arguments.

The plaintiff requests the court to charge:

1. The plaintiff ordered "two cars of s. p. shoulders, if choice, seven," and R. W. Roloson accepted this offer on behalf of William Ryan & Son, for whom he was agent to sell, and the defendants shipped the shoulders in pursuance thereof. The defendants were bound to ship choice s. p. shoulders, and if the jury find that these shoulders when the title thereto vested in the plaintiff were not choice, then their verdict must be for the plaintiff.

Answer: Refused.[5]

2. These shoulders were shipped by defendants to order of R. W. Roloson, Pottsville, Pa., and he indorsed the bill of lading therefor, and then attached it to a draft for the price of the shoulders which he drew upon the plaintiff, and sent them to the Pennsylvania National Bank at Pottsville, Pa., for collection where the draft was paid by plaintiff on August 19, 1881, and the bill of lading then delivered to him. If the jury find that William Ryan & Son retained the control of the two cars of shoulders, until the payment of the draft, then the title to the shoulders did not vest in the plaintiff until the payment of the draft; and if the meat was not in good condition and choice meat on that day, the verdict must be for the plaintiff.

Answer: Refused.[6]

—The jury returned a verdict in favor of the defendants. A rule for a new trial having been discharged, judgment was entered, when the plaintiff took this appeal, assigning as error:

1-4. The portions of the charge embraced in [   ] [1 to 4]

5, 6. The answers to the plaintiff's points.[5 6]

*Mr. Rudolph M. Schick* and *Mr. Richard P. White*, for the appellant.

Counsel cited: Reed's App., 34 Pa. 207; Houseman v. Building Ass'n, 81 Pa. 256; Holloway v. Jacoby, 120 Pa. 583.

*Mr. J. Willis Martin* and *Mr. Benj. P. Wilson*, for the appellees.

Counsel cited: Ryan v. Ulmer, 108 Pa. 332; Shisler v. Baxter, 109 Pa. 443; Kirk v. Nice, 2 W. 367; Port Carbon Iron Co v. Groves, 68 Pa. 149; Whitaker v. Eastwick, 75 Pa. 229; Warren v. Philadelphia Coal Co., 83 Pa. 437.

OPINION, MR. JUSTICE McCOLLUM:

The parties to this action were dealers in pork, the appellant at Pottsville, Pa., and the appellees at Dubuque, Iowa. On the 3d of August, 1881, the latter authorized Roloson, a provision broker in Chicago, to "offer five car loads of fully cured pickled shoulders, average not above twelve pounds, at not below six and one half cents, f. o. b. Dubuque." On the 9th of August, he informed them that he had sold two cars of sweet-pickled shoulders "at 6.85, f. o. b. Dubuque," and requested them to send the same to his order at Pottsville. The shoulders were shipped as he directed, and the bill of lading was sent to him. He reported this purchase and consignment to appellant, and indorsed and sent to him the bill of lading accompanied by a draft for the price. The invoice received by the appellant, before he paid the draft, described the meat as "sweet-pickled shoulders."

In this transaction, Roloson was the agent of both parties; he sold for the appellees, and bought for the appellant. When this case was here before, 108 Pa. 332, it was held that the facts above recited constituted a sale of sweet-pickled shoulders deliverable on board the cars at Dubuque, and that there was no implied warranty of quality in it. This is conclusive of all the questions now discussed, except such as arise from appellant's telegram to Roloson, on the 5th of August. There was no claim on the first trial that the appellant had ordered or was entitled to receive choice sweet-pickled shoulders, and the appellees were not informed of such claim until nearly eight years after the sale. It now appears that on the 5th of August, 1881, the appellant authorized Roloson, by telegram, to "buy two cars s. p. shoulders if choice seven," and it is contended that "seven" refers to the price, and "choice" to the quality, of the pork. Assuming that this is a correct interpretation of the telegram, we are to consider whether the obligation of the vendors was enlarged by it.

It distinctly appears in the evidence produced by the appellant that he bought "sweet-pickled shoulders at 6.85," and not choice sweet-pickled shoulders at seven; that the sale was at Dubuque, and completed by delivery on board the cars there, and that he had notice of its terms by his correspondence with Roloson, and the invoice in his possession when he paid the

Statement of Facts.

draft. In the presence of these facts, a telegram which the vendor never saw or heard of until the second trial, and which the appellant and his agent knew did not enter into the sale, cannot be allowed the effect now claimed for it. It was not a part of the contract sued upon, or an element in the decision of the cause. It was well said by the learned judge of the court below that " Roloson was the agent of both parties. When he bought, he was acting for the plaintiff; when he sold he was acting for the defendants. His evidence shows wherein each of the parties was responsible for his actions." The rule that notice to the agent is notice to the principal has no application to the facts of this case, and neither party can take anything by it. If the appellees had constructive notice of the appellant's telegram, he had like notice of the instructions Roloson received from them.

The judgment is affirmed.