## Ryman, Appellant, *v.* Gerlach.

[Marked to be reported.]

*Transfer of stock—Notice—Estoppel.*

The rule that the owner of stock who, by a power of attorney, signed in blank, has conferred upon another all the indicia of ownership, is estopped to assert his title to it as against a third person who has in good faith purchased it for value from the apparent owner, does not obtain where there are circumstances to put such person on inquiry. Wood's Ap., 92 Pa. 379, distinguished.

*Conversion of stock—Evidence of ownership.*

Bodmer, a stockbroker in Wilkes-Barre, and defendants, stockbrokers in Philadelphia, were correspondents. Defendants executed orders for Bodmer for the purchase and sale of stocks on the Philadelphia and New York Stock Exchanges, dividing the commissions when the rules did not forbid. There was a private wire between the two offices, which was used in sending quotations and orders. Plaintiff employed Bodmer to purchase through defendants some stock and bonds which were paid for by plaintiff's check to defendants, and the stock and bonds were sent to Wilkes-Barre. Subsequently plaintiff gave a similar order to Bodmer for other securities, who transmitted it to defendants, sending also the first securities, to which were attached blank transfers signed by plaintiff. These securities were to be held by defendants to secure part of the purchase money on the new order. Defendants credited them in a general account with Bodmer. Before the purchase money had been fully paid, defendants failed, and the securities were subsequently sold by them or their receiver. *Held*, in an action for a wrongful conversion of the securities, that there was sufficient evidence to submit to the jury to determine whether defendants had sufficient notice of the real ownership of the securities.

WILLIAMS and MITCHELL, JJ., dissent.

Argued March 31, 1892. Reargued Jan. 3, 1893. Appeal, No. 195, Jan. T., 1892, by plaintiff, William P. Ryman, from judgment of C. P. No. 3, Phila. Co., June T., 1891, No. 173, on verdict for defendants, William Gerlach et al., trading as

Gerlach & Harjes.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ., on the reargument.

Trespass for conversion of stock.

The facts appear by the opinion of the Supreme Court.

At the trial, before GORDON, J., the court gave binding instructions for defendants. Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* was above instruction, quoting it.

The case was originally argued on March 31, 1892, STERRETT and McCOLLUM, JJ., being absent, by *Preston K. Erdman, Henry M. Hoyt* with him, for appellant; and *Thomas R. Elcock, John V. McGeoghegan* with him, for appellees. On July 13, 1892, a reargument was ordered of the following points:

1. Was there evidence of notice to defendants of plaintiff's ownership?

2. Assuming that there was no such notice before defendants sold the securities, had defendants the right, as between themselves and Bodmer, to sell them?

3. If, as between defendants and Bodmer, the former had no right to sell without notice, are they liable to the owner of the securities illegally sold?

*Preston K. Erdman, Lyman H. Bennett* with him, for appellant.—Trover, which is now one of the forms of trespass, is the proper remedy where stock pledged as collateral security has been sold without notice, and a tender of the debt is not necessary, but the same may be recouped from the damages: Neiler v. Kelley, 69 Pa. 403; Work v. Bennett, 70 Pa. 485. So the pledgor may follow stock in the hands of a sub-pledgee: Donald v. Suckling, L. R., 1 Q. B. 585, and cases, infra.

The doctrine that the owner of stock or other securities who, by a power of attorney, signed in blank, has conferred upon another all the indicia of ownership, is estopped to assert his title to it as against a third person who has in good faith purchased it for value from the apparent owner, does not obtain where there are circumstances to put such person on inquiry: Leiper's Ap., 108 Pa. 377; Ellis's Ap., 8 W. N. 538; Foster v. Berg, 104 Pa. 324; Sheffield v. Bank, L. R. 13 Ap. 333,

Fisher v. Brown, 104 Mass. 259; Bank v. Cady, L. R. 15 Ap. 267.

Defendants dealt with Bodmer, a broker, sharing commissions and expenses with him, and they had no right to accept his business mingled in one account, in his name, for they must have known that it was the business of his customers. Such a custom between brokers of different cities has already received the direct disapproval of this court: Evans v. Waln, 71 Pa. 69.

The relations between Bodmer and defendants made them mutually agents of each other.

There was evidence of knowledge on the part of defendants that Bodmer's local customers, or some of them, and not Bodmer himself, were the owners of all the securities, including those in question, which Bodmer transmitted to the defendants, or which the latter bought on his order.

The stocks named in plaintiff's second item of claim had previously been purchased for him by defendants on his orders given through Bodmer. The stocks and bonds named in plaintiff's first item of claim were purchased by defendants through Bodmer on plaintiff's order to the latter, pursuant to previous assurances from Bodmer to plaintiff that said stocks and bonds would be carried for plaintiff on the strength of the stocks already pledged by him.

A pledgee or a holder of a collateral security cannot appropriate it in satisfaction of the debt intended to be secured at his own option, unless in pursuance of a contract to that effect, or sell it without first giving notice to the pledgor of his intention to do so, in order that he may have an opportunity to redeem it if he desires. The sale must be public when it is made, and the notice must specify both time and place: Diller v. Brubaker, 52 Pa. 498; Sitgreaves v. Bank, 49 Pa. 359; Davis v. Funk, 39 Pa. 243.

If at the time the pledgor applies to redeem, the pledge has been sold by the pledgee without any proper notice to the former, no tender of the debt due need be made before bringing an action therefor, for the party has incapacitated himself to comply with his contract to return the pledge: Story on Bailments, § 349.

.. *Thomas R. Elcock, John V. McGeoghegan* with him, for appellee.—Defendant had a right to rely on the powers of attorney: Wood's Ap., 92 Pa. 379; Burton's Ap., 93 Pa. 214; Dovey's Ap., 97 Pa. 153.

Appellant asserts a rule of law nowhere recognized, that is, that a person is bound to look beyond the title conferred by the certificate of stock, and scan the transaction between the holder and the prior owners. The only circumstances relied upon to establish notice were (1) that Bodmer was a broker; (2) that a telegraph wire ran from Philadelphia to Wilkes-Barre, over which defendants sent quotations of stocks; (3) that Bodmer and defendants divided a commission in some other transaction—they must have knowledge of every transaction which Bodmer had with any one.

If a pledgor comes into a court of equity he must do equity by first paying the debts secured and allowing for other offsets: Newton v. Fay, 10 Allen, 505; Hathaway v. Bank, 131 Mass. 15; Halliday v. Holgate, L. R. 3 Ex. 299. Authority to subpledge stock may be inferred from the circumstances of the pledge contract, and previous transactions between the parties may be brought in to show such authority: Lawrence v. Maxwell, 58 Barb. N. Y. 511; Chamberlain v. Greenleaf, 4 Abb. N. C., N. Y. 178; Hope v. Lawrence, 1 Hun, 317. There is a well known and established custom among bankers and brokers to allow a pledgee of stock to sub-pledge them. It is necessary to carry on their business. This was determined in this court in VanHorn v. Gilbough, 10 W. N. 347.

A general custom that a broker may pledge his customer's stock for the purpose of raising money to carry it, is valid: Price v. Grover, 40 Md. 102; Donald v. Suckling, L. R. 1 Q. B. 585; Langton v. Waite, L. R. 6 Eq. 165; France v. Clark, L. R. 22 Ch. D. 830; Sargent's Case, L. R. 17 Eq. 279; Van Horn v. Gilbough, 21 Am. L. R., N. S. 171; s. c. 10 W. N. 347; Canfield v. Minneapolis, etc., 14 Fed. R. 801; Goss v. Emerson, 23 N. H. 38; Jarvis v. Rogers, 15 Mass. 389; Levy v. Loeb, 85 N. Y. 370; Stewart v. Drake, 46 N. Y. 449; Frost v. Clarkson, 7 Cowen, 24; Allen v. Dykers, 3 Hill, 593; Hubbell v. Drexel, 11 Fed. R. 115.

They may agree that the stock may be sub-pledged, and no custom will be allowed to vary such a contract: Stenton v.

Jerome, 54 N. Y. 480; Baker v. Drake, 66 N. Y. 518; Lawrence v. Maxwell, 53 N. Y. 19; Taussig v. Hart, 58 N. Y. 425; Levy v. Loeb, 85 N. Y. 365; Ogden v. Lathrop, 65 N. Y. 158; Hubbell v. Drexel, 11 Fed. R. 115. The notice could be waived by consent or by custom: Colket v. Ellis, 32 Leg. Int. 82; s. c. 10 Phila. 375.

The presumption is that the parties dealt under the established custom: Sutton v. Tatham, 37 E. C. L. R. 25; Mitchell v. Newhall, 15 M. & W. 308; Bayley v. Wilkins, 18 L. J. C. P. 273; Bayliffe v. Butterworth, 17 L. J. Ex. 78; Coles v. Bristowe, L. R. 4 Ch. 3; Horton v. Morgan, 19 N. Y. 170; Walls v. Bailey, 49 N. Y. 473; Milliken v. Dehon, 27 N. Y. 374; Carter v. Phila. Coal Co., 77 Pa. 290; McMaster v. Pa. R. R., 69 Pa. 374; Helme v. Ins. Co., 61 Pa. 107; Gilpin v. Howell, 5 Pa. 42.

One who purchases stock from the pledgee in good faith gets a good title, and a sub-pledgee in good faith can hold it for his advances: McNeil v. Tenth National Bank, 46 N. Y. 325; Cushman v. Thayer M. Co., 76 N. Y. 365; Bank v. R. R. Co., 30 Conn. 231; Holbrook v. Zinc Co., 57 N. Y. 616; Bank v. Lanier, 11 Wallace, 369; Lowry v. Bank, Taney U. S. 310; Mount Holly Co. v. Ferree, 17 N. J. Eq. 117; Prall v. Tilt, 27 N. J. Eq. 393; Brewster v. Sime, 42 Cal. 139; Willis v. Philada. R. Co., 6 W. N. C. 461; Cowdrey v. Vandenburgh, 101 U. S. 572; Honald v. Meyer, 36 La. An. 585; Stone v. Brown, 54 Texas, 330; Kisterbock's Ap., 127 Pa. 601.

One dealing with the holder of a certificate of stock with a blank power of attorney has a right to believe that he is the owner of it: Leavitt v. Fisher, 4 Duer, N. Y. 1; Fatman v. Lobach, 1 Duer, N. Y. 354. And the true owner is estopped from denying that his agent has the title: Burton's Ap., 93 Pa. 214; Zulick v. Markham, 6 Daly, 129; Dickinson v. Dudley, 17 Hun, 569. Nor can the broker be liable for conversion in selling stock without notice, for the customer has no right to possession until payment: Wood v. Hayes, 15 Gray, 375; Covell v. Loud, 135 Mass. 41.

OPINION BY MR. JUSTICE DEAN, February 6, 1893:

This suit was brought by Ryman, plaintiff, against Gerlach & Harjes, defendants, to recover the market value of certain bonds

and stock, which plaintiff averred belonged to him, and defendants wrongfully converted to their use. The statement is in trover.

Plaintiff is a resident of Wilkes-Barre, Pa., defendants are stockbrokers in Philadelphia. Henry Bodmer, who, although not a party of record, was an active party in the transactions resulting in this litigation, is a stockbroker with an office at Wilkes-Barre. Bodmer and defendants were correspondents in the stockbroking business; they executed his orders for the purchase and sale of stocks on both the Philadelphia and New York stock exchanges; when the rules of either exchange did not forbid, they divided commissions; when they did, Bodmer charged the customer an additional percentage for his compensation. There was a private wire between the two offices, and over this quotations were received by Bodmer, and orders sent by him to Gerlach & Harjes.

On the 31st of May, 1889, Ryman, through Bodmer, ordered the purchase of 100 shares Texas Pacific Railroad stock; it was bought for him by defendants, the certificates made out in his —Ryman's—name, transmitted to Bodmer and by him delivered to Ryman, who then delivered his check for the price, two thousand one hundred and sixty-eight dollars and seventy-five cents ($2,168.75), payable to the order of Gerlach & Harjes, to Bodmer, who transmitted it to them. This check included the commissions of both brokers, and the money was received on it by defendants.

Some time after this transaction Ryman purchased, through the same parties, in precisely the same way, 100 shares of N. Y., Susquehanna & Western Railroad stock. After the delivery of this last stock, in November, 1890, Ryman wanted to buy Atchison, Topeka & Santa Fe stocks; he proposed to Bodmer that a purchase he made of the Atchison stock, to be carried for him until the following 1st of January by Bodmer, he to secure Bodmer by a deposit, as collateral, of the 200 shares of the stocks first bought, Ryman to pay for the stock so purchased on January 1st, and lift the collateral. This was satisfactory to Bodmer, and agreed to by him; at the time the agreement was had, it was understood between them that the order was to be executed through Gerlach & Harjes; Ryman asked Bodmer if they transacted a legitimate business; Bod-

mer assured him they did no other kind of business. Under this arrangement a purchase of 50 shares of Atchison stock was made, and ten thousand dollars ($10,000) of Atchison income bonds; there were some sales and purchases of the last named securities to get them, according to Ryman's testimony, at a lower price, but, he avers, always for actual delivery and not as a wagering transaction.

So far as appears from the evidence the Texas Pacific, New York, Susquehanna & Western, and the Atchison stock and bonds remained in possession of Gerlach & Harjes at Philadelphia up to 30th of December, 1889, when they failed in business, and these stocks, without notice to either Bodmer or Ryman, were sold by defendants or their receiver, and the proceeds credited to Bodmer, with whom alone they had any account. It appeared as a fact at the trial, that not only Ryman's stocks, but those of all others who did business through Bodmer, were entered on the books of defendants as Bodmer's, and treated as his by them. Ryman, after the failure of Gerlach & Harjes, wrote to them inquiring about his securities, but received no answer; in April following he came to Philadelphia and saw Harjes, one of the partners, and offered to pay for the Atchison stock and bonds and take up the collateral, but Harjes said the account was kept with Bodmer alone, and without his authority he would have no communication with Ryman in regard to the matter.

We have stated the facts as alleged by Ryman; some of them are denied by defendants, but there was evidence tending to establish them, and from which the jury might have found them. As the court below peremptorily directed a verdict for defendants, we are bound, in passing on the assignments of error, to treat these alleged facts, of which there was evidence, as if found by the jury.

Assuming the facts to be as plaintiff alleges, would they, if submitted to the jury, have warranted them in finding that defendants, when they sold these stocks and appropriated the proceeds to the credit of Bodmer, knew they were the property of Ryman?

If Ryman be believed, he was in fact the owner, although credited on defendants' books to Bodmer; if Bodmer had refused to deliver them on January 1st, on payment or offer to

pay, as he had agreed to do, Ryman could certainly have sustained a suit against him. But Bodmer had mixed them with other securities of other customers, and deposited the whole with defendants to his individual credit; on the two hundred shares deposited there was a transfer in blank on the certificates. While this would not affect his right against Bodmer, it did estop him from asserting his claim as against purchasers without notice.

As to the Atchison securities, there had never been an actual delivery; they were purchased on the order of Bodmer by defendants on the deposit of the other 200 shares.

If Bodmer had placed these stocks to his individual account with other than these defendants, with a party having no such business relations with him, and no such connection with the transaction by which Ryman became the owner of the 200 shares, the presumption would be a fair one that the holders were innocent purchasers, or at most were accountable to Bodmer alone. But all the peculiar circumstances here, with the positive testimony of Ryman and Bodmer, must be considered. Bodmer, a broker in Wilkes-Barre, solicits for and directs orders to Gerlach & Harjes, who are members of the stock exchange; defendants knew Bodmer was not buying and selling stocks for himself, but for customers; they knew they, by order of Bodmer, had purchased these 200 shares for Ryman, for they had them issued to him and received his check for them; when the certificates came back with the blank transfer on them, signed by Ryman, it was not for purpose of immediate sale, for they held them. Why was the transfer executed, and the stock delivered to Bodmer? Ryman testifies that it was done that they might be held as collateral security in a purchase of Atchison stocks, which were to be carried for him until January 1st. Bodmer, not being a member of the stock exchange, had his orders executed through defendants; he testifies in substance that this order, as accepted by him from Ryman, was transmitted to defendants to be carried out. If all this be true, then they knew the 200 shares belonged to Ryman, and they held them and any purchases made on them as a security, subject to the same liabilities as Bodmer.

The defendants offered no evidence. They may have been able to prove that the agreement of Ryman with Bodmer was

not communicated to them; the letters or telegrams between them and Bodmer in reference to this transaction, when they were put in possession of Ryman's stocks, would probably show just what knowledge they had. If their side of the case had been heard, this evidence of plaintiff might have had but little significance. But as the case appeared at the trial, we think the evidence ought to have been submitted to the jury to find whether defendants knew the stocks in dispute were in fact Ryman's. If they did know, then their conversion of them was wrongful, and plaintiff ought to have had a verdict.

It is earnestly argued by appellees' counsel, that the signing of the blank transfers on the certificates is an effectual protection to them against any claim on part of Ryman, and that if this court does not so hold, a new rule will be laid down; a rule compelling a stockbroker to demand from every other broker with whom he deals, proof that he is the actual owner of the stock he offers to sell, and that such a rule will so hamper and obstruct business as to practically suspend transactions in securities. We announce no such rule as the one deprecated nor any new rule; not a single case of the many cited by counsel for appellees lays down a different one from that adhered to here. Wood's Ap., 92 Pa. 390, one of the latest cases, and one in which a more significant effect is given to the blank transfer of a certificate than in any of the other cases, holds that: "If the owner of stock voluntarily gives certificates with blank assignments and power to make transfers to his brokers, who betray the confidence reposed in them, such owner must suffer the loss rather than innocent strangers, whose money the brokers were thereby enabled to obtain." If this were a suit by Ryman against the purchaser of his stock at the sale of Gerlach & Harjes' assets, Wood's Appeal would be directly in point and rule the case in favor of defendant; but here the question is, is there competent evidence from which the jury may find that Gerlach & Harjes are not "innocent strangers?" If they are not, if they knew the securities credited to Bodmer were in fact Ryman's, then the sale of them without authority from either Bodmer or Ryman was a wrongful conversion for which they are answerable. Nor is there any reason, founded on the peculiar necessities of stock dealing, why brokers should not be held to the observance of the same rule of morals and

law as men engaged in other avocations. The rule as we have stated it, seeks only to do this; and if thereby the business of wrongfully appropriating one man's property for the benefit of another be hampered, obstructed, or wholly prevented, then the law accomplishes its very purposes.

The appellant's first and only assignment of error is sus·tained; the judgment is reversed and a new venire is awarded

DISSENTING OPINION, MR. JUSTICE MITCHELL, Feb. 6, 1893:

This case appears to me clearly within the rule of Wood's Appeal, 92 Pa. 379, where it was held that one who has conferred upon another, by a written transfer, all the indicia of ownership of property, is estopped from asserting title to it as against a third person who has in good faith purchased it for value from the apparent owner. The cases where this rule is not applicable are where the indicia of ownership are defective on their face, as in Leiper's Ap., 108 Pa. 377, and Ellis's Ap., 8 W. N. 538, or where the purchaser has notice that the apparent title is limited for specific purposes, and the real title is in another party, as in Foster v. Berg, 104 Pa. 324. Even Sheffield v. Bank, L. R. 13 Ap. 333, so much relied on by appellant, was a case of pledge for a loan to himself, by one who only held as pledgee for advances made by him, and the House of Lords rested the decision explicitly on the ground that the bank had sufficient notice of the limitation of the pledgor's title to put it on inquiry. The general rule is conceded by Lord WATSON (p. 343), "appellant by his own acts had invested Mozley with an apparent dominion and authority which would have enabled him effectually to dispose of the securities to persons who had no occasion to suspect his limited title." The case is entirely in accord with our own above cited.

A certificate of stock with a power of attorney to transfer, duly executed but in blank as to date and name of transferee, is in the position of merchandise prepared for market. That is the way sales and transfers of stock are usually made, and the presumable intent of executing the power to transfer, is to put the holder in position to complete a sale by delivery of the certificate and transfer of the stock. Such transfer carries prima facie a good title. The business of a stockbroker is to buy and sell stock, and when a certificate and power to trans-

fer are put into a broker's hands, the situation is exactly analogous to that of goods or merchandise of any kind, prepared for market, and put into the hands of a dealer in that particular article. The presumption which would arise in the case of an ordinary agent or holder is reinforced by the nature of this particular agent's business.

When therefore in the present case the defendants received the certificates from Bodmer, they were entitled to rest upon the apparent title of Bodmer to sell and transfer. All the indicia were complete. There is no evidence that defendants knew plaintiff at all or his relations with Bodmer, nor was it their business to inquire. As between Bodmer and defendants these were actual purchases and sales made on Bodmer's order. He was the only party that they knew and it cannot be pretended that any one else would have been responsible to defendants on his orders. Whether his orders were on his own account, or were in pursuance of directions from customers of his, whether such customers bought to hold for investment, or to sell on an expected rise, whether they held the stocks full paid, or had pledged them for advances on their purchase, or on other subsequent operations, were all matters beyond the business connection of defendants with the transactions, which defendants were not shown to have known or to have been under any obligation to inquire about. There was no privity of contract between plaintiff and defendants, nor were the stocks ear-marked with any trust or with any evidence of plaintiff's ownership of which defendants were bound to take notice. It is argued that plaintiff's name appearing on the certificates, together with the fact that some at least of the stocks bought through defendants were paid for by Bodmer by plaintiff's checks transmitted to defendants, was sufficient notice of plaintiff's title to put defendants on inquiry. But if the fact that the certificates showed the title to have been in an executor was not enough to put the purchaser on inquiry, as was held in Wood's Appeal, then a fortiori the mere fact that the certificate was in the name of a customer of the broker for whom the stocks had previously been bought, would not have that effect. The first stocks were bought, sent to Bodmer, and by him delivered to plaintiff. That was the end of that transaction. When after the lapse of months they came

back to defendants from Bodmer with a blank power to transfer from plaintiff, defendants were not bound to remember that they had been paid for in the former transaction, by plaintiff's check, and if by chance they did remember it, they were entitled if not bound to presume that he had made new dealings (as was the fact) with Bodmer before putting the certificates and power to transfer into his hands, and with those dealings it was not their business to meddle.

Nor were the business arrangements between Bodmer and defendants shown to have been such as made them mutually agents of each other, so as to bring defendants into Bodmer's relations with the plaintiff. Neither the furnishing of a telegraph wire nor the division of commissions was sufficient to constitute a joint business. The parties dealt with each other as principals, and Bodmer was nothing but a customer, who brought business to the defendants. That the latter in return furnished him with the facilities of a telegraph wire, and made him an allowance on their commissions, was nothing more than the allowance of discounts on prices, or other inducements which commercial houses very commonly offer to large and desirable buyers. I am of opinion that there was no evidence on which a verdict for plaintiff could have been supported and that the learned judge was right in directing it for defendants.

MR. JUSTICE WILLIAMS: I concur in opinion with my Brother MITCHELL.