## Shattuck *v.* American Cement Company, Appellant.

*Corporations—Stock certificates—Power of attorney to transfer title.*

A certificate of stock with a power of attorney to transfer, duly executed but in blank as to date and name of transferee, is in the position of merchandise prepared for market. That is the way sales and transfers of stock are usually made, and the presumable intent of executing the power to transfer, is to put the holder in position to complete a sale by delivery of the certificate and transfer of the stock. Such transfer carries prima facie good title. The business of a stockbroker is to buy and sell stock, and when a certificate and power to transfer are put into a broker's hands, the situation is exactly analogous to that of goods or merchandise of any kind, prepared for market, and put into the hands of a dealer in that particular article. The presumption which would arise in the case of an ordinary agent or holder is reinforced by the nature of this particular agent's business.

The rights of a bona fide holder, as against the true owner of the stock, to whom the apparent owner has either sold or pledged, do not depend on a negotiable character in the certificates, but rest on another principle ; namely, that one who has conferred upon another by a written transfer all the indicia of ownership of property, is estopped to assert title to it as against a third person, who has in good faith purchased it for value from the apparent owner.

If an owner of stock voluntarily gives to his brokers certificates of stock owned by him, but standing in the name of other parties with blank assignments, and power to make transfers endorsed by the registered owners, and the brokers betray the confidence reposed in them, the owner of the certificates must suffer the loss rather than innocent strangers whose money the brokers were thereby enabled to obtain. The principle applies to pledges of stock, and one who purchases from the pledgee may hold against the pledgor ; and if the pledgee pledge it to secure payment of his own debt, the second pledgee may hold it as security till his debt be paid.

Argued Jan. 13, 1903.    Appeal, No. 243, Jan. T., 1902, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1899, No. 216, on case stated in case of Frank R. Shattuck v.

American Cement Company. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Case stated to determine the validity of transfer of stock.

The case stated was as follows :

On September 7, 1899, plaintiff purchased from Jamison Brothers & Company 1,500 shares of the stock of the American Cement Company, being certificates Nos. 483 to 491, inclusive, and Nos. 503 to 508, inclusive, making in all fifteen certificates for 100 shares each, each certificate being in form as follows :

"TEMPORARY CERTIFICATE.

"No.                                                      100 Shares.

"Capital Stock, $2,100,000.

"210,000 shares of $10.00 each.

"AMERICAN CEMENT COMPANY,

"Incorporated under the laws of the state of New Jersey.

"This certifies that Jamison Bros. & Co. is the owner of 100 shares of the capital stock of the American Cement Company, transferable only on the books of the company by the holder hereof in person or by duly authorized attorney on surrender of this certificate properly indorsed.

"Witness the seal of the company and the signatures of the duly authorized officers, affixed this sixth day of January, 1899.

"C. D. VAN DUYN,

"President.

"J. S. JENKS, JR.,

"Treasurer.

"Countersigned and registered

"THE INVESTMENT COMPANY OF PHILADELPHIA,

"JNO. J. COLLIER,

"Secretary."

These certificates were in the name of Jamison Brothers & Company, and contained upon the back a blank assignment and power of attorney, in the following form :

"For Value Received                    hereby sell, assign and transfer unto                                            shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint

attorney to transfer the said stock on the books of the within-named company, with full power of substitution in the premises.

"Dated September 6, 1899.

"JAMISON BROS. & CO.   [SEAL]

"Sealed and delivered in the presence of

    "J. T. BILES."

Each blank assignment and power to transfer was signed by Jamison Brothers & Company, and the certificates of stock, with the power of attorney and assignment thereon, so executed in blank by Jamison Brothers & Company, were delivered by them to the plaintiff.

Plaintiff had been in the habit of transacting business with the firm of Stahl & Straub, of Philadelphia, who were bankers and brokers, having an office at No. 505 Chestnut street, in the city of Philadelphia, the said firm being composed of Gustav Stahl and Joseph H. Straub. Plaintiff was attorney for the said firm, as well as a customer, and there was in the safe of Stahl & Straub, in their office, a large pocketbook or wallet, in which they were in the habit of keeping securities which belonged to their customers, and in this wallet was a large envelope, marked with the name of plaintiff, and in that envelope were a number of shares of stock and other securities which belonged to plaintiff and other persons, and which were kept there in the course of business for safety.

On September 7, 1899, plaintiff having the fifteen certificates of stock in the American Cement Company above mentioned in his possession, while passing the office or place of business of said Stahl & Straub, stopped there and handed the fifteen certificates of stock to a clerk in the office named Justus Straub, and instructed him to put the fifteen certificates of stock with the other securities belonging to plaintiff, and the said Justus Straub did then and there place the securities in the envelope marked with plaintiff's name which was in the wallet or pocketbook which was in the safe in the office of the said Stahl & Straub.

That no written or verbal authority was given by plaintiff to said firm of Stahl & Straub, or to either of the members thereof, or to any other person whomsoever, to use the said

certificates of stock or transfer the same or take possession of the same in any way, manner, or form for any purpose whatsoever; and neither was any written nor verbal authority given by plaintiff to Stahl & Straub authorizing them to sell the same at any price or to make delivery of the same to any person; and they had no right, title or interest therein, nor any person any title or interest therein except the plaintiff herein, Frank R. Shattuck.

That Gustav Stahl, one of the partners in the said firm of Stahl & Straub, on September, 12, 1899, without the knowledge or consent of his copartner, Joseph H. Straub, or of the plaintiff, removed the said fifteen certificates of stock from the envelope in which they had been placed, and without any authority whatever from any person took ten of the said certificates of stock, to wit: certificates Nos. 483 to 490, inclusive, and certificates Nos. 507 and 508, each being for 100 shares, and amounting altogether to 1,000 shares, and removed the same from the said envelope without any authority whatever to do so, and without the knowledge and consent of his copartner, Joseph H. Straub, and delivered the same to the Corn Exchange National Bank, who thereupon made a loan to the said Gustav Stahl of $7,000, in the name of Stahl & Straub, upon the security of said shares, repayable on demand, with interest, and received from said Gustav Stahl the said ten certificates of stock assigned in blank by Jamison Bros. & Company. This loan was made by the bank in good faith in the regular course of business, without any notice of the right, title or interest of the plaintiff in the shares, and the said certificates were in nowise pledged to secure the payment of any antecedent indebtedness.

On December 26, 1899, default having been made in the payment of the said sum of $7,000 and interest, the said Corn Exchange National Bank, through Chandler Bros. & Company, brokers, sold 200 of the said shares at the Philadelphia Stock Exchange, for the sum of $8.00 a share, to Charles D. Barney & Company; and on December 28, 1899, at the same place, sold 800 more of the said shares to Edward B. Smith & Company, for the price of $8.00 per share.

That the plaintiff herein having ascertained, on December 27,

1899, that his certificates had disappeared, sent a note to the defendant company, of which the following is a copy :

" December 27, 1899.

" AMERICAN CEMENT COMPANY.

" Gentlemen : In August of this year I purchased through B. K. Jamison 1,500 shares of stock of the American Cement Company, being certificates Nos. 483 to 491, inclusive, and Nos. 503 to 508, inclusive, which certificates of stock were left for safe-keeping only, with Stahl & Straub, bankers and brokers, they having no interest whatever in the same, nor any claim whatever upon the stock. Shortly afterwards, I sold 300 shares and three of these certificates were delivered to the purchaser, the numbers of which, however, I am at present unable to give. The other twelve certificates, amounting to 1,200 shares, have been stolen and are now in the possession of some person or persons to me unknown. You are therefore notified and required not to permit any transfer to be made upon your books of any of these certificates without notice to me, and if any person applies for a transfer of any of these certificates, I require that you shall give me notice, in order that I may take proper legal steps for securing possession of the same.

" Yours truly,

" F. R. SHATTUCK."

In response to this letter said defendant company, under date of December 28, 1899, wrote to the plaintiff as follows :

" December 28, 1899.

" MR. FRANK R. SHATTUCK,

" Philadelphia.

" Dear Sir : In response to your note of December 27, 1899, stating that certain certificates of stock of this company have been stolen from you, and notifying us not to transfer the same without previous notice to you, we notify you that application was made December 27, 1899, by C. D. Barney & Company, Bankers of this city, for the transfer of certificates 488 and 489 which are as yet not transferred. We desire to know immediately whether either of these certificates are those you state as having been sold by you, or whether they are included in those you allege to have been stolen.

"We further advise you, certificate No. 491 was transferred last September 26th to C. F. Osgood Company, and the following certificates were transferred in November: Certificate No. 503 to Jos. S. Lovering; No. 504 to Jos. S. Lovering; No. 505 to Wm. J. Baldy; No. 506 to W. H. Castle.

"We further suggest that you communicate immediately with our counsel, Mr. Henry C. Boyer, No. 537 Chestnut street, and give him fuller particulars respecting the loss of your certificates.

"Yours truly,

"AMERICAN CEMENT COMPANY,

"R. W. LESLEY, President."

And, under date of December 29, 1899, plaintiff replied in a letter addressed to Henry C. Boyer, Esq., of which the following is a copy:

"December 29, 1899.

"HENRY C. BOYER, ESQ.,

"No. 537 Chestnut Street:

"Dear Sir: On the 27th inst. I addressed a letter to the American Cement Company in regard to some stock and in reply they have referred me to you as their attorney.

"The facts in this matter are as follows:

"When the original subscriptions to the stock of the American Cement Company were offered to the public I personally subscribed to 1,500 shares upon the subscription list held by Jamison Bros. & Company. I subsequently paid them $15,000 and received 15 certificates of 100 shares each in the name of Jamison Bros. & Company, and by them indorsed; the certificates were numbered 483 to 491 and 503 to 508.

"All of these certificates I deposited for safe-keeping with Messrs. Stahl & Straub. Subsequently I sold 300 of these shares but do not know the numbers of the certificates delivered to the purchaser.

"Since the failure of the firm of Stahl & Straub, I find that they deliberately stole the remaining 12 certificates, and on the 27th inst. I notified the American Cement Company of this fact and requested them not to transfer the stock without notice to me.

"I am now informed that on the same day two of these cer-

tificates were presented for transfer by C. D. Barney & Company and your clients desire instructions as to what to do.

"I am making further inquiry and using my best efforts to identify the actual certificates legitimately sold, and the numbers of the ones stolen, and will furnish you with this information as soon as I obtain it.

"Yours very truly,<br>
"F. R. Shattuck."

Under date of January 2, 1900, said Henry C. Boyer, Esq., attorney for the defendants, wrote a letter to the plaintiff, of which the following is a copy:

"January 2, 1900.

"Frank R. Shattuck, Esq.,

"No. 800, Betz Building.

"Dear Sir: I am advised by the American Cement Company that certificates of the stock of that company, Nos. 483, 484, 485, 487, 490, 507 and 508, and which correspond with certain numbers of certificates which you allege to have been stolen from you, were to-day presented by Edward B. Smith & Company, the Bourse, for transfer, and transfer was refused in accordance with my instructions upon your notice.

"This leaves out but one certificate, No. 486, unaccounted for, and I now insist that the company be relieved from further embarrassment in this matter by your immediately filing a bill in equity to restrain the transfer.

"Yours truly,<br>
"Henry C. Boyer."

And on January 4, 1900, the defendant company, having been indemnified by the Corn Exchange National Bank for any loss or damage which they might sustain by reason of such transfer, permitted the ten certificates of stock for 100 shares each to be transferred upon the books of the company and new certificates issued for the same. That the market price of the said stock between December 26, 1899, and January 5, 1900, was as follows:

| 1899. | | | | | | High. | Low. |
|---|---|---|---|---|---|---|---|
| December 26 | . | . | . | . | . | $7\frac{7}{8}$ | $7\frac{3}{4}$ |
| 27 | . | . | . | . | . | $8\frac{1}{2}$ | 8 |
| 28 | . | . | . | . | . | $8\frac{1}{4}$ | $8\frac{1}{4}$ |

| 1899 | | | | | | HIGH. | LOW. |
|---|---|---|---|---|---|---|---|
| December 29 | . | . | . | . | . | . 8¾ | 8 |
| 30 | . | . | . | . | . | 9 | 8¾ |
| January 2 | . | . | . | . | . | . 8⅞ | 8⅞ |
| 3 | . | . | . | . | . | 8⅞ | 8¾ |
| 4 | . | . | . | . | . | . 8⅞ | 8¾ |
| 5 | . | . | . | . | . | 9 | 8⅞ |

If the court be of the opinion that under the facts above stated the plaintiff is entitled to recover the value of said stock, then judgment to be entered for the plaintiff for the value of the same as of the date that his right of action began, with interest thereon to date of judgment. If the court be of opinion that plaintiff is not entitled to recover, then judgment to be entered for the defendant. Each party reserves the right to appeal from the judgment of the court hereon.

The court without filing an opinion entered judgment for plaintiff for $10,250.62. Defendant appealed.

*Error assigned* was in entering judgment for plaintiff.

*Richard C. Dale*, with him *Henry C. Boyer* and *Samuel Dickson*, for appellant, cited: Westinghouse v. German Nat. Bank, 196 Pa. 249; United States v. Vaughan, 3 Binn. 394; Com. v. Watmough, 6 Wharton, 117; Wood's App., 92 Pa. 379; Sheffield v. London Joint Stock Bank, L. R. 13 App. Cas. 333; Burton's App., 93 Pa. 214; Ryman v. Gerlach, 153 Pa. 197; Goodwin v. Robarts, L. R. 10 Exch. 337.

*E. O. Michener* and *John G. Johnson*, for appellee, cited: Penna. Co. v. Franklin Fire Ins. Co., 181 Pa. 40; O'Herron v. Gray, 168 Mass. 573 (47 N. E. Repr. 429); Land Co. v. Dennis, 85 Alabama, 565 (5 So. Repr. 317); Barstow v. Savage Mining Co., 64 Cal. 388 (1 Pac. Repr. 349); Tel. Co. v. Davenport, 97 U. S. 371; Knox v. Eden Musee, 31 L. R. A. 779; Biddle v. Bayard, 13 Pa. 150; Given's App., 16 Atl. Repr. 75; Penna. R. R. Co.'s App., 86 Pa. 80.

OPINION BY MR. JUSTICE BROWN, March 23, 1903:

It seems to be useless for us to call the attention of some of the lower courts to the propriety of an opinion containing the

reasons for entering a judgment where reasons manifestly ought to be given. In the present case reasons for the judgment entered certainly ought to have been given, and it is to be regretted that the learned court withheld them.

When the appellee purchased the stock from Jamison Brothers & Company, they handed to him proper certificates, with an assignment and power of attorney on the back of each, signed by them in blank. They parted with all their interest in the stock, and, when they delivered the certificates to their vendee with their signatures to the blank assignments and powers of attorney, they gave authority to him to insert his own or any other name as the transferee of the stock and to designate any one as the attorney to make the formal transfers on the books of the American Cement Company. That the stock was transferable only on the books of the company by Jamison Brothers & Company, to whom the certificates had been originally issued, was a condition inserted in the certificates only for the convenience and protection of the corporation itself : Commonwealth v. Watmough, 6 Wh. 116 ; and in no manner affected the title of Shattuck, which was absolute upon the delivery of the certificates to him. There was nothing either on the face or back of any one of them to indicate that they belonged to him. The evidence of the ownership of the stock, as gathered from each certificate, was that it had been originally issued to Jamison Brothers & Company ; that, for a valuable consideration, they had sold it to an unnamed vendee, and that whoever might have possession of the certificates as the purchaser directly from the firm, or through some one to whom they had sold and delivered them in the first instance, should be regarded and dealt with as their owner. The evidence of Shattuck's title was not a transfer to him, but was his possession of the certificates, which it is to be fairly presumed were handed to him by the brokers from whom he had purchased, with the transfers in blank, because he had so requested for his own convenience, if he should wish to dispose of them to others, without going through the formality of transfers upon the books of the company.. Instead of having himself named as transferee, he saw fit to take the certificates in the shape in which they are usually handed over to purchasers from brokers, knowing that his possession of them

would be regarded as the evidence of his title and his authority to insert proper names in the blank transfers and blank powers of attorney. Upon presentation of them to the company by himself or others acquiring title through him, he or they, at any time, could have demanded and would have received new certificates in their own names. If he had sold his stock to another, nothing more would have been required of him than a mere delivery of the certificates to the vendee, and so they could have passed from hand to hand, each succeeding vendee having implied authority from Jamison Brothers & Company, the original holders, to fill up the blanks, though there was no necessity either in law or according to the usages of trade to do so, until some purchaser wished to keep them as a permanent investment or feared to allow them to remain in a condition which might cause serious consequences if they should get into hands for which they were not intended. With the certificates in this shape, Shattuck entrusted them to the safe-keeping of his brokers, and the question is whether he shall suffer the consequences of their bad faith to him, or the same shall fall upon another who acted in good faith with the brokers as the holders of the certificates, possessing, according to the usages of trade, the indicia of ownership of the stock.

The appellee could have absolutely protected himself from the loss which has befallen him through the perfidy of Stahl by having had his name inserted as the transferee of the stock; but he did not do so. He followed one of the well settled usages of the financial world by taking a blank transfer of the stock, which, with the delivery of the certificates to him, was all he needed for the purpose of acquiring the absolute title to the securities. As a rule, stocks are so sold and bought in this busy age, and pass from seller to buyer, quasi negotiable. Occasionally real owners of certificates of stock so transferred to them in blank may be, as in this case, the victims of those to whom they are entrusted in confidence that there will be no abuse of the indicia of ownership; but, notwithstanding such abuse, those who sell and buy stocks in financial communities will continue to sell and buy them as they were sold and bought here. The convenience and necessities of commercial centers will always require such a usage.

With full faith in the integrity of Stahl & Straub, bankers

and brokers, with whom the plaintiff below had been in the habit of transacting business, he left his certificates of stock with them for safe-keeping. He had been not only their customer, but had acted as their attorney, and there was nothing to lead him to think that the certificates would not be returned to him whenever he should call for them. Instead of keeping them safely, Stahl took them from the envelope in which they had been placed and pledged them to the Corn Exchange National Bank, which, in good faith, made a loan to him in the name of Stahl & Straub, and the only question is whether this bank, which has indemnified the American Cement Company, or the appellee, shall bear the loss caused by the bad faith of Stahl. Upon principle and authority, the question can hardly be regarded as an open one.

As applicable to the facts in this case, we adopt the language of our Brother MITCHELL in his dissenting opinion in Ryman v. Gerlach, 153 Pa. 197, which is in harmony with the view entertained by the majority of the court: " A certificate of stock with a power of attorney to transfer, duly executed but in blank as to date and name of transferee, is in the position of merchandise prepared for market. That is the way sales and transfers of stock are usually made, and the presumable intent of executing the power to transfer, is to put the holder in position to complete a sale by delivery of the certificate and transfer of the stock. Such transfer carries prima facie a good title. The business of a stockbroker is to buy and sell stock, and when a certificate and power to transfer are put into a broker's hands, the situation is exactly analogous to that of goods or merchandise of any kind, prepared for market, and put into the hands of a dealer in that particular article. The presumption which would arise in the case of an ordinary agent or holder is reinforced by the nature of this particular agent's business."

When the certificates of stock, with the transfers in blank indorsed upon them, were placed in the hands of Stahl & Straub by Shattuck, he acted innocently and in good faith; but another, equally innocent, dealt with one of the men to whom he had entrusted his stock with all the indicia of ownership; and if one of these two innocent persons is to suffer, the rule, as everywhere recognized, is that, where one by his own act arms another with power to act for him, he who so armed the wrong-

doer must suffer for the consequences of the wrongdoing: Bank of Kentucky v. Schuylkill Bank, 1 Parsons's Eq. 248; Burton's Appeal, 93 Pa. 214; Ryman v. Gerlach, supra; Goodwin v. Robarts, L. R. 1 App. Cas. 476. There was nothing to indicate to the Corn Exchange National Bank that Stahl & Straub were not the owners of the certificates. They presented them in the regular course of business to the bank, for the purpose of procuring money upon them, and there was nothing to put the bank on inquiry as to the right, title or interest of the plaintiff below, or anyone else, in the shares of stock. The bank took them in good faith, and its title to them cannot now be impeached by the unfortunate appellee. " The rights of a bona fide holder, as against the true owner of the stock, to whom the apparent owner has either sold or pledged, do not depend on a negotiable character in the certificates, but rest on another principle : ' namely, that one who has conferred upon another by a written transfer all the indicia of ownership of property, is estopped to assert title to it as against a third person, who has in good faith purchased it for value from the apparent owner.' As a general rule, the vendor or pledgor can convey no greater right of title then he has. Simply intrusting the possession of a chattel to another as a depositary, pledgee or other bailee, is insufficient to prevent the real owner reclaiming his property in case of an unauthorized disposition of it by the person so intrusted. The mere possession of chattels, without evidence of property or authority to sell from the owner, will not enable the possessor to give good title. But if the owner intrusts to another the possession of property, and also written evidence of title and power of disposition over it, as respects innocent third persons, he is deemed as intending it shall be disposed of at the pleasure of the depositary. If there be conditions on which this apparent right of control is to be exercised, not expressed on the face of the instrument, the case, in principle, is like that of an agent who receives secret instructions qualifying or restricting an apparent absolute power. If the owner of the stock voluntarily gives certificates with blank assignment and power to make transfers, to his brokers, who betray the confidence reposed in them, such owner must suffer the loss, rather than innocent strangers whose money the brokers were thereby enabled to obtain. The principle ap-

plies to pledges of stock, and one who purchases from the pledgee may hold against the pledgor. And if the pledgee pledge it to secure payment of his own debt, the second pledgee may hold it as security till his debt be paid. ' A person loaning money on such certificate and power, has a right to believe that the borrower from whom he receives them has an absolute right to pledge the stock.' By commercial usage, a certificate of stock accompanied by an irrevocable power of attorney, either filled up or in blank, is, in the hands of a third party, presumptive evidence of ownership in the holder. And where the party in whose hands the certificate is found is a holder for value, without notice of any intervening equity, his title cannot be impeached: Moore v. Metropolitan National Bank, 55 N. Y. 41; McNeil v. Tenth National Bank, 46 N. Y. 325; Pratt et al. v. Tilt et al., 28 N. J. Eq. 479; Bridgeport Bank v. New York & New Hampshire Railroad Co., 30 Conn. 275; Mount Holly, etc., Turnpike Co. v. Ferree, 2 C. E. Green, 117; " Wood's Appeal, 92 Pa. 379.

We need not pursue this discussion further than to say that Pennsylvania Railroad Company's Appeal, 86 Pa. 80, is conclusive that the judgment below should have been in favor of the defendant. In that case, Samuel P. Fearon, in 1860, pledged certain shares of stock as collateral security for a loan, transferring the certificates in blank. At the maturity of the loan he paid the debt, and the shares were returned to him, but the blank transfers and powers of attorney as executed were never canceled. Five or six years after his death his executrix took the certificates of stock and deposited them for safe-keeping with her lawyer, a member of the bar in good standing. Creeley, the lawyer to whom they had been entrusted, used them to secure a personal loan, and Shultz, to whom he delivered the certificates of stock, had the same transferred to himself on the books of the company. On a bill to require the Pennsylvania Railroad Company to issue to the executrix of Samuel P. Fearon duplicate originals of the certificates of stock so transferred to Shultz, the court below directed a decree in favor of the plaintiff. In reversing that decree, while attention was called to the negligence of the railroad company, we said: " But there certainly was negligence on the part of the appellee. As executrix she placed the certificates in the hands of Creeley,

as her attorney, with the blank powers indorsed uncanceled. Thus by her act he was enabled to commit this fraud. The equities of the respective parties are not equal. Where one of two parties, who are equally innocent of actual fraud, must lose, it is the suggestion of common sense, as well as equity, that the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on the other. As Judge KING has well expressed this principle in the Bank of Kentucky v. Schuylkill Bank, 1 Parson's Eq. 248: ' The true doctrine on this subject is that, where one of two innocent persons is to suffer from the tortious act of a third, he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act.' The appellee in this case selected the attorney. She had entire confidence in him. She placed these certificates, with the blank powers, in his hands. He proved unworthy of the trust reposed in him. He perpetrated a gross fraud by which he converted this property to his own use. That he was an attorney at law in good standing does not help her case. He added to the crime of which he was guilty that of moral perjury, by the violation of his official oath. On what principle of equity can she be allowed to throw off from herself on to the appellants the loss which has resulted from the dishonesty of her own agent? This important element in the case was entirely overlooked by the learned master and the court below; and we think, applying it to the undisputed facts of the case, the appellee's bill as to the appellants ought to have been dismissed."

In the present case there was no negligence on the part of the Corn Exchange National Bank. It is conceded that it took the stock from Stahl & Straub in good faith in the regular course of business, without any notice of the right, title or interest of the plaintiff in the certificates. Indeed, there was nothing that the Corn Exchange National Bank could or ought to have done that it did not do. If, in the exercise of extraordinary caution, which was not required of it, it had gone and made inquiry of the only persons who could have informed it as to whom the stock had been sold, it would have been informed by Jamison Bros. & Company that they had parted with all interest in the securities and had sold them to Mr. Shattuck, with authority in him to pass them by delivery to any one who might have pur-

chased them from him.   As stated, the question raised on this appeal is no longer debatable.   The judgment of the court below is reversed and the record remitted, with direction to enter judgment in favor of the defendant.