## W. C. BIGGERS & CO. v. FIRST NAT. BANK OF KAUFMAN.

### No. 3840.

Court of Civil Appeals of Texas. Texarkana.
May 30, 1930.

Rehearing Denied June 12, 1930.

Smithdeal, Shook, Spence & Bowyer, of Dallas, and Tom Whipple, of Waxahachie for appellants.

James Young, of Kaufman, for appellee.

WILLSON, C. J. (after stating the case as above).

Testifying as a witness, each of the appellants said Nash was the agent of his firm to buy cotton in Kaufman county and as such

was authorized to accept drafts drawn on the firm by sellers of cotton and drafts "coming in through other banks" than appellee "with signed bills of lading attached or tickets representing the cotton." Each testified further that in arranging with appellee to pay for cotton purchased for the firm by Nash he never said anything to appellee as to Nash's authority, except to tell it that Nash was their "agent to buy cotton for W. C. Biggers & Company in Kaufman County." It appeared without dispute in the evidence before the court that the draft drawn by C. R. Pannil as stated above "came in" through other banks than appellee and had attached to it what purported to be a bill of lading covering 18 bales of cotton, and that the draft purporting to have been drawn by Jack Haynie had tickets covering 17 bales of cotton attached to it. In other words, it appeared the drafts on their faces were substantially such as Nash had express authority to accept for appellants.

Appellants' contention that a jury nevertheless might have found they (appellants) were not bound by Nash's acts in accepting the drafts is based, so far as the Pannil draft is concerned, in part on the fact that in accepting it Nash signed his own name instead of appellants', but mainly on the fact that the instrument attached to it purporting to be a bill of lading, while signed by them (appellants), had not been signed by the railroad company; and, so far as the Haynie draft is concerned, in part on the fact that it was not signed by Haynie, but by Nash for him, but mainly on the fact that the tickets attached to it were not for cotton then purchased by Nash for them but were for "cotton that had already been shipped out."

■ We think the contention should be overruled. As appears in the statement above, the Pannil draft was drawn on appellants, not on Nash; and undoubtedly his acceptance thereof, while in his own name, was in his capacity as agent for appellants. It appeared in the evidence that before that time appellants had recognized like acceptances by Nash as on their behalf and binding on them.

■ As to the Haynie draft, it appeared that Nash represented to appellee's assistant cashier that it was for cotton he purchased for appellants of Haynie, and that it was at such cashier's instance that Nash signed Haynie's name to the draft. But it further appeared that the amount advanced by appellee on account of Nash's acceptance of the draft for appellants, was by a check it made payable to Haynie, and that the check was not paid until it had been duly endorsed by Haynie.

■ The facts which really distinguished the drafts in question here from many others shown in the testimony to have been accepted by Nash for appellants, and to have been recognized by them as within Nash's authority as their agent, are that the instrument purporting to be a bill of lading attached to the Pannil draft was not signed by the railroad company and the tickets attached to the Haynie draft did not cover cotton purchased by Nash for appellants. It was because of these facts that appellants did not receive the cotton they should have received according to the faces of the drafts. And as we view the evidence, it appeared they did not receive that cotton because of fraud on Nash's part in accepting the drafts when he knew the bill of lading and tickets were not what they purported to be.

Appellants' view seems to be that appellee owed them the duty to inspect bills of lading and cotton tickets attached to drafts accepted by Nash for them, and see to it that the bills and tickets were what they purported to be before advancing money on the drafts. We do not think appellee owed appellants such a duty. On the contrary, in authorizing Nash to act as their agent, we think appellants were in the attitude of representing him to be trustworthy and dependable (21 R. C. L. 846), and that appellee in dealing with him as such agent had a right, in the absence of anything notifying them to the contrary, to assume that Nash was trustworthy and dependable.

■ Of course Nash, as appellants insist was true, was not acting within authority they had conferred on him to accept drafts drawn upon them to pay for cotton he purchased for them when he accepted drafts not drawn for that purpose, but drawn instead for the purpose of defrauding them. But it conclusively appeared that in accepting the drafts as he did Nash acted within the apparent scope of authority he possessed as appellants' agent, and there was no evidence which would have warranted a finding that at the time appellee advanced the amount of the drafts sued on it knew or had any reason to suspect that Nash in accepting them was perpetrating a fraud on appellants. The rule is, when the innocent principal or an innocent third party must suffer loss from misconduct of an agent acting within the apparent scope of his authority as such, that the loss must be borne by the principal. Shattuck v. Cement Co., 205 Pa. 197, 54 A. 785, 97 Am. St. Rep. 735; Supply Co. v. Milner (Tex. Civ. App.) 6 S.W.(2d) 771; Becker v. Bank (Tex. Civ. App.) 286 S. W. 889; Finance Co. v. Floyd (Tex. Civ. App.) 294 S. W. 1113.

The judgment is affirmed.